

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2008

# Swallows Holding v. Comm IRS

Precedential or Non-Precedential: Precedential

Docket No. 06-3388

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Swallows Holding v. Comm IRS" (2008). *2008 Decisions.* Paper 1497.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1497

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-3388

———————

SWALLOWS HOLDING, LTD.

v.

COMMISSIONER OF INTERNAL REVENUE,

Appellant

———————

On Appeal from the United States Tax Court
(No. 02-08045)

———————

Argued on September 25, 2007

Before:  AMBRO, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed February 15, 2008)

Gilbert S. Rothenberg, Esquire **(ARGUED)**
United States Department of Justice
Appellate Section
950 Pennsylvania Avenue, N. W.
Washington, D. C.   20530

Eileen J. O'Connor, Esquire
Assistant Attorney General
Richard T. Morrison, Esquire
Deputy Assistant Attorney General
Jonathan S. Cohen, Esquire
Steven W. Parks, Esquire
Attorneys, Tax Division
United States Department of Justice
P. O. Box 502
Washington, DC  20044

       Counsel for Appellant


Phillip L. Jelsma, Esquire **(ARGUED)**
Luce, Forward, Hamilton & Scripps, LLP
11988 El Camino Real, Suite 200
San Diego, CA   92130

       Counsel for Appellee

—————

O P I N I O N

—————

**ROTH**, <u>Circuit Judge</u>:

This case, grounded in the principles of administrative law, requires that we review the validity of an Internal Revenue Service (IRS) regulation. The Tax Court, in considering this regulation, analyzed it under the factors provided in *National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477 (1979), and concluded that the regulation was invalid. In coming to this conclusion, the Tax Court explained that the standard established in *National Muffler* had not been replaced by *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837 (1984), and that the result under either standard would be the same. We do not agree with the outcome reached by the Tax Court. We have determined that the result would not be the same under *Chevron* analysis as it would be under *National Muffler* and that the regulation here should be given *Chevron* deference.

## I. **Factual and Procedural Background**

The IRS has appealed a United States Tax Court decision that held Treas. Reg. 1.882-4(a)(3)(i) to be invalid. Petitioner-appellee Swallows Holdings, Ltd. (Taxpayer) is a Barbados corporation with two principal shareholders, Raimundo Arnaiz-Rosas and Aurora Elsa Arnaiz. On September 14, 1992, Taxpayer filed its first federal income tax return. In its return, Taxpayer reported that it held real property in San Diego, California. Between 1993 and 1996, Taxpayer generated rental

income from the San Diego property.[1]  It was not until 1999, however, that Taxpayer filed returns for tax years 1993, 1994, 1995 and 1996.

A foreign corporation, engaging in trade or business in the United States, is taxed on its taxable income that is connected with the conduct of that trade or business.  26 U.S.C. § 882(a).  Deductions from income are allowed only if they are connected with the "income which is effectively connected with the conduct of a trade or business within the United States." Section 882(c)(1)(a). However, foreign corporations that do not engage in a trade or business in the United States are taxed at a flat rate of thirty percent of any amount received from sources within the United States.  Section 881(a).  The Internal Revenue Code, generally speaking, does not allow these foreign corporations to claim deductions.  Section 882(c)(2). Nevertheless, if a foreign corporation conducts real property activity in the United States, the foreign corporation can treat the income derived from the real property activity as income from a "trade or business," thus qualifying the foreign corporation to claim tax deductions (e.g., interest and taxes) that are otherwise unavailable.  Section 882(d)(1).

---

[1] The real property located in San Diego remained vacant during the period of time that is relevant to this appeal. Taxpayer leased the property to an entity that used it as a landing zone for sky-diving adventures. *See Swallows Holdings, Ltd. v. C.I.R.*, 126 T.C. 96, 101 (2006).

4

The dispute in this case arises from the filing deadlines set forth in Treas. Reg. 1.882-4(a)(3)(i),[2] which the Secretary of the Treasury promulgated to supplement section 882(c)(2). The regulation requires that a foreign corporation file a return within eighteen months of the filing deadline set in section 6072 in order to claim the real property activity tax deductions. Here, Taxpayer filed the tax returns in question well after the expiration of the eighteen-month filing period. The Commissioner assessed tax deficiencies accordingly.[3]

Taxpayer challenged the Commissioner's findings in the United States Tax Court, arguing that Treas. Reg. 1.882-4(a)(3)(i) was an invalid exercise of the Secretary's rule-making authority. *See Swallows Holdings, Ltd. v. C.I.R.*, 126 T.C. 96 (2006). The Tax Court granted judgment in favor of Taxpayer, focusing its inquiry on the plain meaning of I.R.C. § 882(c)(2). Specifically, the court held that section 882(c)(2) requires that

---

[2] Treas. Reg. 1.882-4(a)(3)(i) provides:

If a return was filed for that immediately preceding taxable year, or if the current taxable year is the first taxable year of the foreign corporation for which a return is required to be filed, the required return for the current taxable year must be filed within *18 months* of the due date as set forth in section 6072 and the regulations under that section . . . .

[3] The Secretary determined that Taxpayer owed deficiencies for 1994, 1995, and 1996.

foreign corporations file "in the manner prescribed by subtitle F . . .." *Id.* at 107. The Tax Court's interpretation of the statute centered on the meaning of the word "manner" in the absence of any explicit textual reference to "time." The court found it persuasive that Congress did not draft the statute with the familiar phrase "time and manner." The court noted that Congress placed "time" and "manner" together in several Code sections, indicating that when Congress intended a time limit to apply, it did so with the phrase "time and manner." Because the court found that the plain meaning of "manner" did not inherently include an element of time, the court concluded that Congress did not intend section 882(c)(2) to embody a filing deadline. *Id.* at 134-46. The court found that the meaning of the statutory text was plain and unambiguous. *Id.* at 135. The court nonetheless continued its analysis and held that the Secretary's interpretation of the statute to include a timely filing requirement in the language of Treas. Reg. 1.882-4(a)(3)(i) was unreasonable. 126 T.C. at 137.

Relying on its earlier opinion in *Central Pa. Sav. Association & Subs. v. Commissioner*, 104 T.C. 384, 392 (1995), the Tax Court determined that the standard established in *National Muffler* had not been replaced by *Chevron* and that the result under either standard would be the same. *Id.* at 131. The court concluded that a consideration of the *National Muffler* factors demonstrated the unreasonableness of the Secretary's interpretation of section 882(c)(2) to include the timely filing requirement. *Id.* at 137. The Tax Court listed the six factors set out in *National Muffler* to consider in assessing the reasonableness of the agency action. The Tax Court described these factors as follows:

6

(1) whether the regulation is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent; (2) the manner in which a regulation dating from a later period evolved; (3) the length of time that the regulation has been in effect; (4) the reliance placed upon the regulation; (5) the consistency of the Secretary's interpretations; and (6) the degree of scrutiny Congress has devoted to the regulation during subsequent reenactments of this statute.

*Id.* at 137 (citing *National Muffler*, 440 U.S. at 477).

The Tax Court found that the Secretary's action failed to meet several of the *National Muffler* factors: the regulation was not a substantially contemporaneous construction of the statute; the regulation evolved after the Fourth Circuit Court of Appeals and the Board of Tax Appeals had repeatedly and consistently held that the statute did not include a timely filing requirement;[4] the regulations were issued after multiple reenactments of the statutory text; the Secretary's statement accompanying the issuance of the regulations flew in the face of the prior court holdings and was a departure from the Secretary's previous

---

[4]*See Georday Enter. v. Comm'r*, 126 F.2d 384 (4th Cir. 1942); *Blenheim Co. v. Comm'r*, 125 F.2d 906 (4th Cir. 1942); *Ardbern Co. v. Comm'r*, 120 F.2d 424 (4th Cir. 1941); *Taylor Sec. Inc. v. Comm'r*, 40 B.T.A. 696 (1939); *Anglo-American Direct Tea Trading Co. v. Comm'r*, 38 B.T.A. 711 (1938).

interpretation of the 1957 regulations; and the statute had been reenacted several times without change to the governing statutory language. *Id.* at 137-38. As a result, the court held that the regulation was an unreasonable exercise of the Secretary's statutory power. Thus, the Tax Court ruled in favor of Taxpayer, holding that I.R.C. § 882(c)(2) did not include a filing deadline and that Taxpayer was entitled to the rental activity deductions. The IRS appealed.

## II. **Discussion**

### A. **Jurisdiction**

We have jurisdiction to review the final judgment of the Tax Court pursuant to I.R.C. § 7482(a)(1); *see also New York Football Giants, Inc. v. C.I.R.*, 349 F.3d 102, 105-06 (3d Cir. 2003). We exercise plenary review over the Tax Court's legal conclusions but will only set aside factual findings that are clearly erroneous. *Capital Blue Cross v. C.I.R.*, 431 F.3d 117, 123-24 (3d Cir. 2005).

### B. **Applicability of *Chevron***

The crucial issue before us is whether the Tax Court erred in applying *National Muffler* rather than *Chevron* when evaluating the validity of Treas. Reg. 1.882-4(a)(3)(i). We hold that the Tax Court erred in applying *National Muffler* to the extent that the *National Muffler* factors are inconsistent with *Chevron* analysis.

8

In *Chevron*, the Supreme Court reasoned that the judiciary was to afford an agency discretion to interpret ambiguous provisions of the agency's organic or enabling statute. In what has become familiar administrative law parlance, the *Chevron* Court set forth a two step analysis:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress [*Chevron* Step one]. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute [*Chevron* Step two].

*Chevron*, 467 U.S. at 842-43. Courts, including the Supreme Court, have operated under this general framework post-*Chevron*. *See, e.g.*, *Nat'l Cable & Telecomm. Ass'n. v. Brand X Internet Serv.*, 545 U.S. 967, 980-81 (2005); *United States v.*

9

*Mead Corp.*, 533 U.S. 218, 226 (2001); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 248-49 (3d Cir. 2005); *George Harms Const. Co. v. Chao*, 371 F.3d 156, 161 (3d Cir. 2004); *Robert Wood Johnson Univ. Hosp. v. Thompson*, 297 F.3d 273, 281-82 (3d Cir. 2002). In accordance with this precedent, we will proceed to determine if this case should be reviewed under *Chevron*.

Our inquiry would be a simple one if, as the Tax Court suggested, the result of this case would be the same regardless of which standard we apply. This, however, is not the case. The Tax Court relied heavily on factors that, although relevant to the *National Muffler* standard, are not mandatory or dispositive inquiries under *Chevron*. As we set out above, the Tax Court reasoned that the challenged regulation was not a contemporaneous construction of the statute; the Tax Court found that the Fourth Circuit Court of Appeals and the Board of Tax Appeals had interpreted the statute as not including a timing element, and the Tax Court relied on the existence of several re-enactments of the statute without any change to the governing statutory language.[5]

---

[5] We take time to note that the Tax Court and the Taxpayer erroneously rely on the legislative re-enactment doctrine. Legislative re-enactment is a doctrine under which "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Reese Bros., Inc. v. United States*, 447 F.3d 229, 238 (3d Cir 2006). Application of this doctrine is appropriate only when "an agency's statutory

Even if we were to assume that all of these observations are true, conclusive reliance on them is misplaced. When *Chevron* deference is owed, *Chevron*'s demands are clear. If the statutory text is ambiguous, an agency is given the discretion to promulgate rules that interpret the ambiguous provisions. Judicial deference to an agency's rule-making authority ends only when the agency's construction of its statute is unreasonable. Accordingly, we now consider whether *Chevron* deference is appropriate here.[6]

construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." *Id.* (citations omitted). Taxpayer has not met this burden. Accordingly, we find that legislative re-enactment doctrine is inapplicable here.

[6] In reaching this conclusion, we agree with a recent Second Circuit opinion, which reviewed the validity of a Treasury Regulation issued by the IRS. *See McNamee v. I.R.S.*, 488 F.3d 100 (2d Cir. 2007). The regulation at issue in *McNamee* dictated a limited liability company's ability to elect certain tax treatment. Rather than apply *National Muffler*, the Second Circuit placed the inquiry within the purview of *Chevron*, *Mead* and *Brand X*. Although the court cited to *National Muffler*, it did not apply its six-factor balancing test, and it did not assert that *National Muffler* was governing by itself. Instead, the court simply used *National Muffler* to explain that an agency's interpretation of an ambiguous provision must be reasonable, a

11

## C. *Chevron* Analysis

We note that *Chevron* deference will not be extended to all agency action. *Mead*, 533 U.S. at 229-31. *Mead* teaches that *Chevron* deference is appropriate only in situations where "Congress would expect the agency to be able to speak with the *force of law . . ..*" *Id.* at 229 (emphasis added). When Congress does not intend a particular agency action to wield the force of law, *Skidmore* deference may be appropriate.[7] Thus, *Mead* requires that we assess the legal effect of Treas. Reg. 1.882-4(a)(3)(i), which was promulgated under I.R.C. § 7805. Section 7805, which is a general grant of power to the Secretary, provides:

> Except where such authority is given by this title to any person other than an officer or employee of the Treasury Department, the Secretary shall prescribe all needful rules and regulations for the

proposition that is not at odds with *Chevron*'s core teachings.

[7] *Skidmore* deference is derived from the Supreme Court's holding in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Under *Skidmore*, a court will determine the amount of deference to afford agency action based on an evaluation of several factors. The factors include "the thoroughness evident in [an agency's] consideration, the validity of [an agency's] reasoning, [an agency's] consistency with earlier and later pronouncements, and all those factors which give [an agency] power to persuade, if lacking the power to control." *Id.*

enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

We note first that the deference owed to regulations issued under I.R.C. § 7805(a) has been described over the years in different ways. In *National Muffler,* of course, the Supreme Court listed factors such as whether the regulation was contemporaneous with the statute, the age of the regulation, and the consistency of its interpretation. 440 U.S. at 477. More recently, however, in *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 219 (2001), the Court remarked that "we defer to the Commissioner's regulations as long as they 'implement the congressional mandate in some reasonable manner.'" *Id.* at 219 (quoting *United States v. Correll*, 389 U.S. 299, 306-07 (1967).[8]

In *Armstrong World Inds., Inc. v. Comm'r*, 974 F.2d 422, 430 (3d Cir. 1992), this Court considered the validity of a regulation issued under section 7805(a). We cited to *Chevron,*

---

[8]The Court in *Cleveland Indians*, in fact, went on to quote *National Muffler*, not for the factors listed by the Tax Court in this case for determining deference, but for the overall concept that "Congress has delegated to the [Commissioner], not to the courts, the task of prescribing all needful rules and regulations for the enforcement of the Internal Revenue Code." 532 U.S. at 219 (quoting *National Muffler*, 440 U.S. at 477) (brackets in original).

467 U.S. at 842-44, to support the need to determine if "'Congress has directly spoken to the precise question at issue,' and if the intent of Congress is unambiguously expressed, we must give that intent effect." *Id.* at 430 (quoting *Chevron*, 467 U.S. at 843). Again quoting *Chevron*, we went on to state that "[i]f the question has not been directly addressed, we then look to whether 'the agency's answer is based on a permissible construction of the statute.'" Under this standard, we concluded that the regulation, promulgated under section 7805(a), was not "unreasonable, arbitrary, capricious, or contrary to the plain language of the Code," *id.* at 442, and held the regulation to be valid.

As we did in *Armstrong World Industries*, we will look to *Chevron* here to determine the validity of Treas. Reg. 1.882-4(a)(3)(i).

Taxpayer argues, however, that the Secretary promulgated an interpretive regulation and that interpretive regulations, as a class, do not merit *Chevron* deference. We disagree. When determining whether Congress intends a particular agency action to carry the force of law, our inquiry does not hinge solely on the type of agency action involved. Rather, "[d]elegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rule-making, or by some other indication of a comparable congressional intent." *Mead*, 533 U.S. at 227. There is no *per se* rule that relegates interpretive rules to the realm of *Skidmore*. Here, the Secretary opened the rule to public comment, a move that is indicative of agency action that carries the force of law. *Id.* at 229-30; *Cleary v. Waldman*, 167 F.3d 801, 808 (3d Cir.1999).[9] Accordingly,

---

[9] This Court has extended *Chevron* deference to interpretive rules in the past. *See, e.g.*, *Mercy Catholic Med. Ctr. v.*

14

the resulting regulation is entitled to *Chevron* deference if it survives *Chevron*'s two prong inquiry.[10]

---

*Thompson*, 380 F.3d 142, 154-55 (3d Cir. 2004) (noting that although informal interpretations are not entitled to *Chevron* deference, formal interpretations, authorized to carry the "force of law," are properly placed within *Chevron*'s purview); *George Harms Const. Co. v. Chao*, 371 F.3d 156, 161 (3d Cir. 2004) (determining that after *Mead*, agency interpretations are entitled to *Chevron* deference if the *Mead* "force of law" test is met); *Elizabeth Blackwell Health Ctr. for Women v. Knoll*, 61 F.3d 170, 182 (1995) (reasoning, pre-*Mead*, that *Chevron* "deference is appropriate here even though the Secretary's interpretation is not contained in a 'legislative rule'").

[10]This conclusion is in accord with the treatment our sister circuits have given to rules promulgated under I.R.C. § 7805, or its predecessor. *See, e.g.*, *McNamee v. Department of Treasury*, 488 F.3d 100, 106 (2d Cir. 2007) ("Because Congress has delegated to the Commissioner to promulgate 'all needful rules and regulations' [in I.R.C. § 7805(a)] . . . we must defer to his regulatory interpretations of the Code so long as they are reasonable"); *Hospital Corp. of America v. C.I.R.*, 348 F.3d 136, 140-41 (6th Cir. 2003) (reasoning that general grant of authority under I.R.C. §7805(a) still prompts judicial deference to rules promulgated thereunder); *Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 982-83 (7th Cir. 1998) (reasoning that *Chevron* is appropriate analysis for interpretive IRS regulations); *United States v. Cook*, 494 F.2d 573, 574 (5th Cir. 1974) ("A Treasury Regulation which is a reasonable interpretation of a section of the Internal Revenue Code has the effect of law.").

## 1. *Chevron Step One: Ambiguity of the Statutory Text*

First, previous judicial interpretations of I.R.C. §882(c)(2) do not preempt our analysis in determining if the statute is ambiguous. Taxpayer argues that our analysis is unnecessary pursuant to the Supreme Court's holding in *National Cable & Telecommunications Ass. v. Brand X Internet Services, Inc.*, 545 U.S. 967 (2005). *Brand X*, however, held that "[o]nly a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." *Id.* at 982-83. No such opinion exists in this case.[11] Accordingly, we are not bound by previous judicial interpretations of I.R.C. § 882(c)(2).

Under *Chevron*, if the statutory language is clear and unambiguous, our inquiry ends and the plain meaning of the statute governs the action. 467 U.S. at 842-43. If, however, the statutory provision is ambiguous, such ambiguity is viewed as an implicit congressional delegation of authority to an agency,

---

[11] Taxpayer heavily relies on *Anglo-American Tea Trading Co. v. C.I.R.*, 38 B.T.A. 711 (1938). The court in *Anglo-American* did not purport to adopt or apply the unambiguous meaning of the word "manner." Rather, the court detailed the interpretive confusion that courts confronted. Only after detailing this confusion did the court decide that no timing element was applicable. *Id.* at 714; *see also Ardbern Co. v. C.I.R.*, 120 F.2d 424, 426-27 (relying on *Ango-American* without applying "unambiguous meaning"). The Tax Court acknowledged this fact, noting that previous judicial constructions "did not state explicitly that they were applying the unambiguous meaning of the word 'manner' . . .." *Swallows Holding*, 126 T.C. at 145.

16

allowing the agency to fill the gap with a reasonable regulation. *MCI Telecomm. Corp. v. Bell Atlantic-Pa.*, 271 F.3d 491, 515-16 (3d Cir. 2001). The inquiry into the ambiguity of a statutory provision must begin with the text of the statute. The text of I.R.C. § 882(c)(2) reads in pertinent part:

> A foreign corporation shall receive the benefit of the deductions and credits allowed to it in this subtitle only by filing or causing to be filed with the Secretary a true and accurate return, in the manner prescribed in subtitle F, including therein all information which the Secretary may deem necessary for the calculation of such deductions and credits.

Our inquiry focuses on the requirement that foreign companies file "with the Secretary a true and accurate return, in the *manner* prescribed in subtitle F." Taxpayer argues that the word "manner" does not by its nature include a timing element, thus indicating that Congress did not intend for a filing deadline to exist. This is an overly narrow interpretation of "manner." Courts that have interpreted "manner" as used in I.R.C. § 882(c)(2) and its predecessors have struggled over whether "manner" includes a timing element, which indicates that the language is not clear and unambiguous. *Compare Anglo-American Tea Trading Co. v. C.I.R.*, 38 B.T.A. 711, 714 (1938) (discussing divergent conclusions and adopting interpretation that excludes a "timing" element), *with Espinosa v. Comm'r*, 107 T.C. 146, 156 (1996) (reasoning that provision embodied some "cut-off" period, even if not expressly stated).

Moreover, Congress uses "manner" without "time" in other sections of the Code, and, in some of these situations, "manner" has been interpreted to implicitly include a timing element. *See* I.R.C. §§ 179(c), 835(c)(2). In these provisions,

17

Congress did not use the phrase "time and manner," yet the Secretary promulgated valid regulations that include temporal components. *See* Treas. Reg. §§ 1.179-5(a(, 1.826-1(a)(3)(i). Thus, Congress does not uniformly use the phrase "time and manner" when it desires a particular Code provision to embody a timing element. Rather, we find "manner," depending on the context, may be a comprehensive term.

As used in this instance, the word "manner" may be defined as "a characteristic or customary way of acting." WEBSTER'S DICTIONARY 724 (9th Ed. 1986). Under this definition, the provision is not a clear and unambiguous expression of congressional intent, as one's "customary way of acting" may include an element of timeliness. Further, Congress's use of "manner" in I.R.C. § 882(c)(2) prompts contextual ambiguity. We could read "manner" to refer to subtitle F, which itself includes timing elements. Alternatively, we could read this provision as indicating that Congress did not wish the timing requirements of subtitle F to apply. Reading the statute this way would not foreclose the Secretary from promulgating a regulation that sets a filing deadline. Instead, it would only restrict the Secretary from promulgating a regulation that would embody the timing elements of subtitle F.

As a result, we hold that Congress's use of the word "manner" creates ambiguity. Therefore, Congress has not "spoken to the precise question at issue." *Chevron*, 467 U.S. at 843. Rather, because we find I.R.C. § 882(c)(2) to be ambiguous, the Secretary was justified in promulgating a rule that prescribed a filing deadline.

## 2. *Chevron Step 2 - Reasonableness of the Secretary's Action*

Our inquiry is not yet at its end, as we will only defer to

the Secretary's action if it is a permissible construction of I.R.C. § 882(c)(2). *See Woodall*, 432 F.3d at 248 (citing *Chevron*, 467 U.S. at 842-43). We "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11. Often, a promulgated rule is the culmination of intense debate between the agency, Congress, other members of the Executive Branch and the public. Rules represent important policy decisions, and should not be disturbed if "'this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute . . ..'" *Id.* at 845 (quoting *United States v. Shimer*, 367 U.S. 374, 382-83 (1961)). Further, *Chevron* deference is "even more appropriate in cases" that involve a "'complex and highly technical regulatory program . . ..'" *Robert Wood*, 297 F.3d at 282 (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). The Code is indisputably complex and technical, and we will adjust our inquiry accordingly.

In this case, the Secretary has promulgated a rule that creates an eighteen-month window within which foreign companies must file a federal tax return in order to claim rental activity tax deductions. Taxpayer argues that previous cases upholding the disallowance of deductions under I.R.C. § 882(c)(2) involved filing deadlines that permitted at least a two year window within which foreign corporations could have filed timely tax returns. From this, Taxpayer draws the conclusion that it is unreasonable for the Secretary to promulgate a rule with a filing period of less than two years. We find Taxpayer's argument to be unpersuasive. The Secretary will, under the current regulation, allow a foreign company to file eighteen months after the filing was originally due. Moreover, because I.R.C. § 6072(c) already provides for a five and one-half month

filing period, foreign companies have, in practice, twenty-three and one-half months to submit a "timely" return. It is not unreasonable for the Secretary to impose such a deadline.

Additionally, we believe that drawing this temporal line is a task properly within the powers and expertise of the IRS. *Chevron* recognizes the notion that the IRS is in a superior position to make judgments concerning the administration of the ambiguities in its enabling statute. In this case, the IRS found that eighteen months served as a balance between its desire for compliance with the federal tax laws and a foreign corporation's desire to obtain valuable tax deductions. Therefore, we hold that the eighteen-month filing window created by Treas. Reg. 1.882-4(a)(3)(i) is a reasonable exercise of the Secretary's authority.

## III. <u>Conclusion</u>

For the forgoing reasons, we will vacate the judgment of the Tax Court and remand this case for further proceedings in accordance with this opinion.