131 T.C. No. 18

UNITED STATES TAX COURT

NEW MILLENNIUM TRADING, L.L.C., AJF-1, L.L.C., TAX MATTERS
PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3439-06.                Filed December 22, 2008.

        P challenges adjustments in a notice of final
partnership administrative adjustment (FPAA) issued to NM.
The FPAA, in part, determined that penalties under sec.
6662, I.R.C., were applicable.  P, wanting to raise partner-
level defenses to the determination of sec. 6662, I.R.C.,
penalties if we should sustain R's substantive
determinations in this partnership-level proceeding, has
filed a motion for partial summary judgment to declare that
sec. 301.6221-1T(c) and (d), Temporary Proceed. & Admin.
Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999), is invalid, or, in
the event we hold the regulation valid, that it does not
apply to the instant proceeding.

        <u>Held</u>:  Sec. 301.6221-1T(c) and (d), Temporary Proceed. &
Admin. Regs., <u>supra</u>, is valid.

        <u>Held</u>, <u>further</u>:  Sec. 301.6221-1T(c) and (d), Temporary
Proceed. & Admin. Regs., <u>supra</u>, applies to the instant

proceeding, so that partner-level defenses cannot be asserted in this partnership proceeding if we should sustain R's substantive determinations.

Thomas A. Cullinan and Julie P. Bowling, for petitioner.

James R. Rich, for respondent.

OPINION

GOEKE, Judge: This case is before the Court on petitioner's motion for partial summary judgment filed pursuant to Rule 121.[1] Petitioner asks that we hold section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999), invalid, or if valid, inapplicable. For the reasons stated herein, we will deny petitioner's motion in both respects.

Background

The following information is stated for purposes of this Opinion only; this case has yet to be tried on the merits.

On May 20, 1999, Andrew Filipowski established the AJF-1 Trust (trust) by a declaration of trust. Mr. Filipowski was the grantor, cotrustee, and sole beneficiary of the trust and was considered its owner for income tax purposes under sections 671 through 678.

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code (Code).

On July 29, 1999, AJF-1, L.L.C. (AJF-1), was formed by the filing of a certificate of formation with the State of Illinois. The trust was the sole member of AJF-1. AJF-1 was disregarded as an entity separate from its owner for Federal income tax purposes pursuant to section 301.7701-3(b)(ii), Proced. & Admin. Regs.

In August 1999 AJF-1 opened a trading account with AIG International (AIG). On August 19, 1999, AJF-1 entered into two transactions with AIG: (1) AJF-1 purchased a European-style call option on the euro for a premium of $120 million; and (2) on that same day, AJF-1 sold to AIG a European-style call option on the euro for a premium of $118.8 million (collectively, the euro options). AJF-1 paid the $1.2 million net premium of the euro options to AIG.

New Millennium Trading, L.L.C. (New Millennium), was formed on August 6, 1999, under the laws of the State of Delaware. New Millennium's original members were Banque Safra-Luxembourg, S.A. (Banque Safra), Fidulux Management, Inc. (Fidulux), and Shakti Advisors, L.L.C. (Shakti). Banque Safra, Fidelux, and Shakti contributed $300,000, $150,000, and $20,000, respectively, to New Millennium for their partnership interests.

AJF-1 joined New Millennium in September 1999. AJF-1 contributed $600,000 and entered into an Assignment and Assumption Agreement dated September 30, 1999, whereby New Millennium assumed the rights and obligations of the euro

options.  New Millennium valued AJF-1's total contribution at $1,772,417.

After joining New Millennium, AJF-1 had a partnership interest of 79.04-percent, while Shakti, Fidelux, and Banque Safra had interests of .89 percent, 6.69 percent, and 13.38 percent, respectively.

AJF-1 requested withdrawal from New Millennium by letter dated December 2, 1999.  AJF-1 was deemed to have withdrawn on December 15, 1999.  On December 20, 1999, New Millennium distributed 617,664 euro and 21,454 shares of Xerox Corp. stock valued at $1,068,388.40 to AJF-1.  This distribution was made to redeem AJF-1's account.  On December 23, 1999 AJF-1 sold all the Xerox Corp. stock and 530,000 of the 617,664 euro, for $464,191 and $537,420, respectively.

On September 21, 2005 Respondent issued a notice of final partnership administrative adjustment (FPAA) to New Millennium. The FPAA made a number of adjustments:  (1) It disallowed New Millennium's claimed operating loss of $669,206 and other deductions of $18,712, and (2) it decreased to zero the capital contributions, and distributions of property other than money accounts.  The FPAA indicated these changes in chart form.  Each adjustment was shown in a chart with an "adjustment," "as reported," and "corrected" box accompanying each individual adjustment.  The chart included numerical figures for each of the

above adjustments but showed asterisks instead of numerical figures as to outside partnership basis.

In addition, respondent made a number of determinations regarding New Millennium and its partners under the title of "EXHIBIT A". This explanation of items is attached hereto as an appendix. These explanations alleged in pertinent part that: (1) New Millennium was not established as a partnership in fact; (2) if New Millennium existed in fact, it was entered into solely for tax avoidance purposes; (3) New Millennium was a sham, lacked economic substance, and was entered into to decrease its partners' tax liabilities in a manner inconsistent with chapter 1, subchapter K of the Code; (4) neither New Millennium nor its partners entered into the euro options with a profit motive; (5) neither New Millennium nor its partners have established bases in their partnership interests greater than zero; and (6) penalties under section 6662 are applicable.

On February 16, 2006, petitioner petitioned this Court, alleging that respondent's determinations were erroneous. On February 6, 2008, petitioner filed a motion for partial summary judgment (motion). On March 12, 2008, respondent filed his response thereto, and on April 25, 2008, petitioner filed a memorandum in support of its motion. A hearing was held on petitioner's motion on June 27, 2008, during the Court's trial session in Washington, D.C.

Petitioner filed concurrently with the motion a motion to dismiss for lack of jurisdiction as to adjustments to the partners' outside bases and penalties (motion to dismiss). We have recently denied by order petitioner's motion to dismiss because under Petaluma FX Partners, L.L.C. v. Commissioner, 131 T.C. ___ (2008), the extent of our jurisdiction over outside basis and the applicability of penalties determined in the FPAA cannot be established until after a trial on the merits to decide whether New Millennium should be respected as a partnership for tax purposes.

## Discussion

### I. Motion for Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of material fact, and the Court will view any factual material and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). Rule 121(d) provides that where the moving party properly makes and supports

a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavits or otherwise, "showing that there is a genuine issue for trial."  The matter before us is ripe for summary judgment.

Whether the regulation at issue is valid is strictly a question of law.  Although this Court has applied this regulation to prevent partners from raising partner-level defenses in a partnership proceeding, see Fears v. Commissioner, 129 T.C. 8 (2007); Santa Monica Pictures, L.L.C. v. Commissioner, T.C. Memo. 2005-104, we have not ruled squarely on the validity of section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999).

## II.  TEFRA Procedures

Partnerships do not pay Federal income taxes, but they are required to file annual information returns reporting the partners' distributive shares of income, deductions, and other tax items.  Secs. 701, 6031.  The individual partners then report their distributive shares of the tax items on their Federal income tax returns.  Secs. 701-704.

To remove the substantial administrative burden occasioned by duplicative audits and litigation and to provide consistent treatment of partnership items among partners in the same partnership, Congress enacted the unified audit and litigation

procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402, 96 Stat. 648. See Randell v. United States, 64 F.3d 101, 103 (2d Cir. 1995); H. Conf. Rept. 97-760, at 599-600 (1982), 1982-2 C.B. 600, 662-663.

Under TEFRA, all partnership items are determined in a single partnership-level proceeding. Sec. 6226; see also Randell v. United States, supra at 103. The determinations of partnership items in partnership-level proceedings are binding on the partners and may not be challenged in subsequent partner-level proceedings. See secs. 6230(c)(4), 7422(h). Thus the courts need not redecide the same issues with each partner of the partnership.

TEFRA also allows for the imposition during the partnership-level proceeding of penalties on adjustments to partnership items. Sec. 6221; see also Santa Monica Pictures, L.L.C. v. Commissioner, supra. Before the 1997 amendments, TEFRA provided for the determination of all penalties at the partner level. N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744-745 (1987). Amendments to TEFRA in 1997 changed this structure and provided for the imposition of penalties at the partnership level. After amendment, section 6221 provides:

> Except as otherwise provided * * * the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level.

If a partnership item is adjusted, a penalty, if applicable, can be imposed on that adjustment during the TEFRA proceeding. If the court is considering the imposition of penalties, it may consider the reasonable cause defenses of the partnership. See sec. 6664(c); Whitehouse Hotel Ltd. Pship. v. Commissioner, 131 T.C. ___ (2008); Santa Monica Pictures, L.L.C. v. Commissioner, supra; Jade Trading, L.L.C. v. United States, 80 Fed. Cl. 11, 59-60 (2007); Stobie Creek Invs. L.L.C., v. United States (Stobie Creek II), 82 Fed. Cl. 636, (2008); Stobie Creek Invs., L.L.C. v. United States (Stobie Creek I), 81 Fed. Cl. 358 (2008). If a penalty was imposed at the partnership level during the TEFRA proceeding, the Commissioner may assess that amount without issuing a notice of deficiency. Sec. 6230(a)(1); N.C.F. Energy Partners v. Commissioner, supra at 744; sec. 301.6231(a)(6)-1T(a), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3840 (Jan. 26, 1999).

If a partner believes that a penalty was incorrectly assessed against him following a determination at the partnership level, section 6230(c)(1)(C) provides that the partner may file a claim for refund on the grounds that the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item. Section 6230(c)(4) details what can be contested during a refund claim filed under section 6230(c)(1). Pursuant to section 6230(c)(4),

the determination under the FPAA or under the decision of a court concerning the applicability of any penalty relating to an adjustment to a partnership item shall be deemed conclusive; however, "the partner shall be allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment." Read together, sections 6221 and 6230 provide that a partner is allowed to raise partner-level defenses to a penalty imposed during a partnership-level proceeding only in a refund action later filed under section 6230(c).

If a partner has an increased liability stemming from an affected item or a computational adjustment that requires a factual determination at the partner level, the normal deficiency procedures outlined in sections 6212 and 6213 apply. Sec. 6230(a); sec. 301.6231(a)(6)-1T(a)(2), Temporary Proced. & Admin. Regs., supra; see Domulewicz v. Commissioner, 129 T.C. 11, 17-19 (2007).

Petitioner's motion asks this Court to rule that: (1) Section 301.6221-1T(c) and (d) Temporary Proced. & Admin. Regs., supra,[2] is invalid because it was promulgated without authority and conflicts with Congress's statutory scheme, or in the alternative should we find that the regulation is valid, (2)

---

[2]Although temporary during the year at issue, sec. 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999), was made final and applicable to partnership taxable years beginning on or after Oct. 4, 2001. Sec. 301.6221-1(f), Proced. & Admin. Regs.

section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs.,

supra, does not apply to this case.

Section 301.6221-1T(c) and (d), Temporary Proced. & Admin.

Regs., supra, was promulgated pursuant to the Secretary's

authority under section 7805(a).  Section 7805(a) provides:

> SEC. 7805(a).  Authorization.--Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

Section 301.6221-1T(c), Temporary Proced. & Admin. Regs., supra,

provides:

> (c) Penalties determined at partnership level (partnership taxable years ending after August 5, 1997). Any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be determined at the partnership level.  Partner level defenses to such items can only be asserted through refund actions following assessment and payment.  Assessment of any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item shall be made based on partnership-level determinations.  Partnership-level determinations include all the legal and factual determinations that underlie the determination of any penalty, addition to tax, or additional amount, other than partner level defenses specified in paragraph (d) of this section.  [Emphasis added.]

Section 301.6221-1T(d), Temporary Proced. & Admin. Regs., supra,

provides:

> (d) Partner-level defenses.  Partner-level defenses to any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item, may not be asserted in the partnership-level proceeding, but may be asserted through separate refund actions following assessment and payment.  See section 6230(c)(4).  Partner

level defenses are limited to those that are personal to the partner or are dependant upon the partner's separate return, and cannot be determined at the partnership level. Examples of these determinations are whether any applicable threshold underpayment of tax has been met with respect to the partner or whether the partner has met the criteria of section 6664(b) (penalties applicable only where return is filed), or section 6664(c)(1) (reasonable cause exception) subject to partnership level determinations as to the applicability of section 6664(c)(2). [Emphasis added.]

Petitioner advances two arguments for declaring the regulation invalid: (1) Congress gave the Tax Court jurisdiction to consider partner-level defenses but the Secretary exceeded his authority in promulgating a regulation stripping the Court of that jurisdiction; and (2) even if the Secretary had authorization to issue section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., supra, the regulation is invalid because it both conflicts with and is an unreasonable interpretation of section 6221.

III. Tax Court Jurisdiction To Consider Partner Defenses

Petitioner first argues that Congress gave the Tax Court jurisdiction to consider partner-level defenses during a partnership-level proceeding but that the Secretary exceeded his statutory authority in promulgating a regulation removing that authority.

Petitioner argues that the Secretary exceeded his authority in promulgating this regulation because the Secretary issued section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs.,

supra, pursuant to section 7805, which is a general grant of authority.

Petitioner argues that an administrative agency cannot strip a court of jurisdiction on the basis of a general grant of authority but instead needs a specific grant of authority from Congress in order to do so. Petitioner contends that when a court reviews a regulation that strips the court of jurisdiction, the administrative agency is not entitled to any deference because the question of a court's jurisdiction is outside agency expertise. Petitioner draws support for this argument from Adams Fruit Co. v. Barrett, 494 U.S. 638 (1990), and Nagahi v. INS, 219 F.3d 1166 (10th Cir. 2000).

In Adams Fruit Co. v. Barrett, supra at 649, the Supreme Court rejected a Department of Labor interpretation of the Migrant and Seasonal Agricultural Worker Protection Act (the act) determining that a migrant worker did not have a private right of action under the act if a State workers' compensation benefit was available to the worker. The Court stated that the delegation of authority to promulgate regulations on which the Department of Labor relied did--

> not empower the Secretary to regulate the scope of the judicial power vested by the statute. Although agency determinations within the scope of delegated authority are entitled to deference, it is fundamental "that an agency may not bootstrap itself into an area in which it has no jurisdiction." * * *

Id. at 650 (quoting Fed. Maritime Commn. v. Seatrain Lines, Inc., 411 U.S. 726, 745 (1973)).

In Naghahi v. INS, supra at 1167, the Court of Appeals was asked to consider a regulation promulgated by the Immigration and Naturalization Service that imposed a 120-day filing requirement for the start of a suit challenging an INS determination. The court found the regulation invalid because the statutory grant of authority provided by Congress did not "'empower the Secretary to regulate the scope of the judicial power vested by the statute.'" Id. at 1170 (quoting Adams Fruit Co. v. Barrett, supra at 650).

Petitioner argues that the regulation is not entitled to any judicial deference because under petitioner's reading of the statutory scheme, the Tax Court would have jurisdiction to consider a partner's reasonable cause defenses at the partnership level but for the regulation. Petitioner points to changes made to the TEFRA procedures in 1997 in support of its argument that the Tax Court has jurisdiction to consider partner level defenses. Before 1997, penalties were assessed at the partner level. N.C.F. Energy Partners v. Commissioner, 89 T.C. at 744-745. Congress, recognizing that penalties were often based upon partnership-level conduct, enacted changes to section 6221. These changes provide that penalties related to adjustments to partnership items can be determined during the TEFRA proceeding. If a partner who was unable to raise a defense disagreed with the

determination and subsequent assessment of those penalties, Congress provided that partner with the opportunity to raise partner-level defenses in a refund action.  Sec. 6230(c)(4).

Petitioner argues that Congress intended to give partners other than the general or managing partner a choice in deciding where to raise their partner-level defenses; a partner can raise them either during the TEFRA proceeding or in a later refund action.  Petitioner argues that because a partner is entitled to choose when to raise those defenses but the regulation prevents this choice, the regulation is invalid under Adams Fruit Co. v. Barrett, supra, and Naqahi v. INS, supra.

Respondent argues that the 1997 amendments changed the Court's jurisdiction so that during the TEFRA proceeding reasonable cause defenses can be raised, but they must be the defenses of the partnership rather than those of individual partners.

We agree with respondent that a partner cannot raise partner-level defenses in a TEFRA proceeding.  When considering the determination of penalties at the partnership level, the Court can consider the defenses of the partnership but not partner-level defenses of individual partners.  See Whitehouse Hotel Ltd. Pship. v. Commissioner, 131 T.C. ___ (2008); Santa Monica Pictures, L.L.C. v. Commissioner, T.C. Memo. 2005-104; Stobie Creek I; Jade Trading, L.L.C. v. United States, 80 Fed.

Cl. 11 (2007); cf. <u>Klamath Strategic Inv. Fund, L.L.C. v. United States</u>, 472 F. Supp. 2d 885, 903-904 (E.D. Tex. 2007).

Before the 1997 amendments, the Court did not have jurisdiction to consider the applicability of any penalties during a partnership-level proceeding; therefore the Court did not have jurisdiction to consider an individual partner's defenses. While those 1997 amendments expanded the Court's jurisdiction to consider penalties related to adjustments to partnership items, nothing in section 6221 or 6226(f) granted the Court jurisdiction over an individual partner's partner-level defenses. The 1997 amendments also added section 6230(c)(1)(C), which provides that a partner may file a claim for refund on the grounds that the Secretary erroneously imposed any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item, and the last two sentences of section 6230(c)(4), which provide in relevant part that notwithstanding that a determination under an FPAA or under a decision of a court concerning the applicability of any penalty related to a partnership item shall be otherwise conclusive, a partner will be able to assert any partner-level defenses to the penalty in a refund forum. These amendments make clear that a partner may raise his partner level defenses only in a refund action filed after the close of partnership-level proceedings. The legislative history accompanying the Taxpayer Relief Act of

1997, Pub. L. 105-34, 111 Stat. 788, supports this view, stating: "the partnership-level proceeding is to include a determination of the applicability of penalties at the partnership level. However, the provision allows partners to raise any partner-level defenses in a refund forum." H. Rept. 105-148, at 594 (1997), 1997-4 C.B. (Vol. 1) 319, 916.

The regulation at issue does not strip the Tax Court of jurisdiction. The TEFRA structure enacted by Congress does not permit a partner to raise partner-level defenses during a partnership-level proceeding. See Jade Trading, L.L.C. v. United States, supra. This reading of the statutory scheme is consistent with Stobie Creek I, Stobie Creek II, AWG Leasing Trust v. United States, 101 AFTR 2d 2397, 2008-1 USTC par. 50,370 (N.D. Ohio 2008), and Jade Trading, L.L.C. v. United States, supra. Stobie Creek I, Stobie Creek II, and Jade Trading, L.L.C. involved transactions substantially similar to the ones at issue in the instant case. In all three the court considered the defenses of the partnership, presented through the general or managing partner, but not partner-level defenses of the partners. This result is also consistent with AWG Leasing Trust v. United States, supra, a sale-leaseback case in which the court sustained penalties at the partnership level but stated that individual partners might each be able to prove a reasonable cause defense in a subsequent partner-level refund action under section

301.6221-1(d), Proced. & Admin. Regs. <u>AWG Leasing Trust v. United States</u>, <u>supra</u> at 2425, 2008-1 USTC par. 50,370, at 84,245.

Petitioner also argues that if we were to follow respondent's interpretation, the result would conflict with the policy that taxpayers should be able to challenge alleged tax deficiencies without having to pay and file for a refund. While it is true that a partner cannot raise partner-level defenses during a partnership-level proceeding initiated in the Tax Court, that partner would not be able to raise partner-level defenses during a partnership-level proceeding in either the Court of Federal Claims or a District Court. See Stobie Creek II; <u>Jade Trading, L.L.C. v. United States</u>, <u>supra</u>. Because the statutory scheme provides that a partner may raise his partner-level defenses only in a later refund action, the regulation is entitled to deference by this Court.

## IV. Statutory Conflicts

Petitioner argues that even if we hold that the Secretary had authority to issue section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., <u>supra</u>, we must hold it invalid because it is an unreasonable interpretation of the statutory scheme that conflicts with sections 6221, 6230(c)(4), 6662, and 6664.

Section 6664(c)(1) provides that no penalty shall be imposed under section 6662 or 6663 if it is shown that there was reasonable cause. Petitioner argues that the regulation at issue

is invalid because it requires the Court to determine penalties without evaluating reasonable cause defenses.  Because section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., supra, prohibits partners from raising partner-level defenses in a partnership proceeding, petitioner argues that respondent's interpretation of the statutory scheme is incorrect because it allows for the imposition of penalties on partners who cannot raise partner-level defenses to those penalties except in a later refund action.  Petitioner argues that to impose penalties under section 6662 on partners without considering those partners' partner-level reasonable cause defenses under section 6664 as required by the regulation violates the statutory scheme; therefore the regulation is invalid.  As discussed above, petitioner argues that the current statutory scheme and the legislative history,  when read together, show that Congress intended to offer partners the option to choose between raising their partner-level defenses at the partnership level or afterwards in a refund action.

It is important to note, however, that if a partner has a partner-level individual reasonable cause defense to penalties that is distinct from the partnership's reasonable cause defenses, that partner will be able to raise those defenses in a refund forum.  Sec. 6230(c)(4).

We need not revisit the controversy in this Court regarding the proper standard of review of the Secretary's regulations as between the standard of <u>Natl. Muffler Dealers Association, Inc. v. United States</u>, 440 U.S. 472 (1979), and the standard set forth in <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-843 (1984). See <u>Swallows Holding, Ltd. v. Commissioner</u>, 515 F.3d 162 (3d Cir. 2008), vacating 126 T.C. 96 (2006). Because petitioner states in its petition that New Millennium had no principal place of business when the petition was filed, barring stipulation to the contrary the venue for appeal would appear to be the Court of Appeals for the District of Columbia Circuit. See sec. 7482(b)(1) (flush language) and (2). According to <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we apply the law of the Court of Appeals to which an appeal in the case would normally lie. The U.S. Court of Appeals for the District of Columbia Circuit has held that regulations issued under the general authority of the IRS to promulgate necessary rules are entitled to <u>Chevron</u> deference. See <u>Tax Analysts v. IRS</u>, 350 F.3d 100, 103 (D.C. Cir. 2003). Accordingly, we will follow the <u>Chevron</u> standard in this analysis. The Supreme Court described the analysis to be followed:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of

Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., supra at 842-843 (footnote references omitted).

We will take each paragraph of the regulation in turn. In reviewing section 301.6221-1T(c), Temporary Proced. & Admin. Regs., supra, we first turn to the text of the statute to determine whether the intent of Congress is clear. In answering this question, we are instructed not to confine our examination to a particular statutory provision in isolation. Square D Co. & Subs. v. Commissioner, 118 T.C. 299, 308 (2002) (citing FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)), affd. 438 F.3d 739 (7th Cir. 2006). The meaning, or ambiguity, of certain words or phrases may become evident only when placed in context. FDA v. Brown & Williamson Tobacco Corp., supra at 132-133 (citing Brown v. Gardner, 513 U.S. 115, 118 (1994)). It is a "'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to

their place in the overall statutory scheme.'" Id. at 133

(quoting Davis v. Mich. Dept. of Treasury, 489 U.S. 803, 809

(1989)).

As discussed above, we believe that sections 6221,

6230(c)(1), and 6230(c)(4), when read in conjunction, make clear

that Congress intended for partners to raise partner-level

defenses during a refund action after the partnership proceeding.

Because we hold that Congress has directly spoken to the issue in

section 301.6221-1T(c), Temporary Proced. & Admin. Regs., supra,

we find paragraph (c) of that section to be a valid

interpretation of the TEFRA statutory scheme.

Next, we review section 301.6221-1T(d), Temporary Proced. &

Admin. Regs., supra. Under the first step of Chevron analysis,

we must determine whether Congress's intent is clear. Section

6221 does not mention partner-level defenses. Partner-level

defenses, however, are mentioned in section 6230(c)(4). Because

we find that Congress has not spoken directly on the issue of

what constitutes a partner-level defense under section

6230(c)(4), we must determine whether the Secretary's answer is

based on a permissible construction of the statute.

The first sentence of paragraph (d) of section 301.6221-1T,

Temporary Proced. & Admin. Regs., supra, simply restates that

partner-level defenses can be asserted only in a refund action.

The second sentence defines partner-level defenses as "those that

are personal to the partner or are dependant upon the partner's separate return, and cannot be determined at the partnership level." Id. The final sentence of paragraph (d) provides examples of partner level defenses, including whether any applicable threshold underpayment of tax has been met, whether the criteria of section 6664(b) have been met, or whether reasonable cause under section 6664(c) exists.

We believe that this is also a valid interpretation of the statutory scheme. Congress, as discussed above, intended to have partners raise partner-level defense to the imposition of penalties during a refund action. The expansive definition provided in 301.6221-1T(d) Temporary Proced. & Admin. Regs., supra, does not limit a partner's defenses other than to confirm that a partner-level defense is one that is personal to the partner.

V.   Whether Section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs. Applies

Lastly, petitioner argues that, even if we hold section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., supra, to be valid, we should not apply it to the instant case. Petitioner advances two arguments as to why the regulation at issue should not apply:  (1) Mr. Filipowski's and AJF-1's partner-level defenses must be considered before determining penalties against petitioner; and (2) because partner-level

conduct led to the imposition of penalties, partner-level defenses must be considered.

Petitioner argues that although AJF-1 was not the general or managing partner of New Millennium, AJF-1 was the majority 70-percent partner who has brought suit to challenge respondent's FPAA. Petitioner's argument is that any penalties determined during this partnership-level proceeding will be based on partner conduct; therefore, we should consider those partners' defenses when determining the applicability of any penalties. Petitioner draws support for this argument from an IRS issue paper, which states in pertinent part:

> Good faith and reasonable cause of individual investors pursuant to IRC § 6664 would be the type of partner level defense that can be raised in a subsequent partner-level refund suit. However, to the extent that the taxpayer effectively acted as the general partner and that the intent of the general partner is determined at the partnership level, it is likely that such partnership level determinations may also dispose of partner-level defenses under the unique facts of each case.

Internal Revenue Service (I.R.S.) Industry Specialization Program Coordinated Issue All Industries, Notional Principal Contracts, UIL. No: 9300.20-00 (Jan. 6, 2005).

Petitioner also relies on Santa Monica Pictures, L.L.C. v. Commissioner, T.C. Memo. 2005-104, and Long Term Capital Holdings v. United States, 330 F. Supp. 2d 122 (D. Conn. 2004), affd. 150 Fed. Appx. 40 (2d Cir. 2005), for the proposition that a partner's defenses can be raised at the partnership proceeding.

Respondent points out, however, that in both <u>Santa Monica Pictures, L.L.C.</u> and <u>Long Term Capital Holdings</u>, the defenses considered were those of the managing partner, not a limited partner such as AJF-1.

The applicability of section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., <u>supra</u>, was also considered recently in <u>Jade Trading, L.L.C. v. United States</u>, 80 Fed. Cl. 11 (2007), Stobie Creek I, Stobie Creek II, and <u>Klamath Strategic Inv. Fund, L.L.C. v. United States</u>, 472 F. Supp. 2d 885 (E.D. Tex. 2007).  Those cases all concerned transactions substantially similar to the one at issue.  In <u>Jade Trading, L.L.C.</u>, <u>supra</u>, Stobie Creek I,  and Stobie Creek II, partners were not allowed to raise partner-level defenses during the partnership proceeding.  In <u>Klamath Strategic Inv. Fund, L.L.C. v. United States</u>, <u>supra</u> at 903, the court applied the regulation but found that under some circumstances the reasonable cause exception may be considered a partnership-level defense.  Section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., <u>supra</u>, applies to the instant case.  It is clear from the legislative history and the definitions in section 6231(a) that Congress did not wish the Court to decide all issues associated with a partnership in a single proceeding even if it has the information available to do so.  AJF-1, although a 70-percent partner in New Millennium, will not be able to raise partner-level defenses during this

partnership proceeding.  See Stobie Creek I; <u>Jade Trading,</u> <u>L.L.C., v. United States</u>, <u>supra</u>.  Any partnership defenses of New Millennium will be considered when we determine whether any penalties should be imposed after a trial on the merits.

<u>Conclusion</u>

Because we hold that the statutory scheme does not allow partners to raise partner-level defenses to the determination that penalties apply to adjustments to partnership items during a partnership-level proceeding, we hold that the interpretation in section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., <u>supra</u>, is a proper interpretation of the statutory scheme and is therefore valid.

To reflect the foregoing,

<u>An appropriate order</u>

<u>denying petitioner's motion</u>

<u>will be issued</u>.

APPENDIX

EXHIBIT A to the FPAA issued to petitioner made the following determinations.

1.  It is determined that neither New Millennium Trading, L.L.C. nor its purported partners have established the existence of New Millennium Trading, L.L.C. as a partnership as a matter of fact.

2.  Even if New Millennium Trading, L.L.C. existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners.  The formation of New Millennium Trading, L.L.C., the acquisition of any interest in the purported partnership by the purported partner, the purchase of offsetting options, the transfer of offsetting options to a partnership in return for a partnership interest, the purchase of assets by the partnership, and the distribution of those assets to the purported partners in complete liquidation of the partnership interests, and the subsequent sale of those assets to generate a loss, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes.  Accordingly, the partnership and the transactions described above shall be disregarded in full and any purported losses resulting from these transactions are not allowable as deductions for federal income tax purposes.

3.  It is determined that New Millennium Trading, L.L.C. was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year 1999, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.  It is consequently determined that:

    a.  the New Millennium Trading, L.L.C. is disregarded and that all transactions engaged in by the purported

partnership are treated as engaged in directly by its purported partners. This includes the determination that the assets purportedly acquired by New Millennium Trading, L.L.C., including but not limited to foreign currency options, were acquired directly by the purported partners.

b. the foreign currency option(s), purportedly contributed to or assumed by New Millennium Trading, L.L.C., are treated as never having been contributed to or assumed by said partnership and any gains or losses purportedly realized by New Millennium Trading, L.L.C. on the option(s) are treated as having been realized by its partners.

c. the purported partners of New Millennium Trading, L.L.C. should be treated as not being partners in New Millennium Trading, L.L.C..

d. contributions to New Millennium Trading, L.L.C. will be adjusted to reflect clearly the partnership's or purported partners' income.

4. It is determined that neither New Millennium Trading, L.L.C. nor its purported partners entered into the option(s) positions or purchase [sic] the foreign currency or stock with a profit motive for purposes of § 165(c)(2).

5. It is determined that, even if the foreign currency option(s) are treated as having been contributed to New Millennium Trading, L.L.C., the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party. Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partners and New Millennium Trading, L.L.C.. Consequently, any corresponding claimed increases in the outside basis in New Millennium Trading, L.L.C. resulting from the contributions of foreign currency option(s) are disallowed.

6. It is determined that the adjusted bases of the long call positions (purchased call options), zero coupon notes, and other contributions purportedly contributed by the partners to New Millennium Trading, L.L.C. has

not been established under I.R.C. § 723.  It is consequently determined that the partners of New Millennium Trading, L.L.C. have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

7.   It is further determined that, in the case of a sale, exchange, or liquidation of New Millennium Trading, L.L.C. partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for purposes of determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest.

8.   Accuracy-Related Penalties

It is determined that the adjustments of partnership items of New Millennium Trading, L.L.C. are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions.  In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations.  There has not been a showing by the partnership or any of its partners that there was a reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply.  It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of New Millennium Trading, L.L.C..  The penalty shall be imposed on the components of underpayment as follows:

A.   a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

B.    a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

C.    a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D.    a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC §§ 7201, 7206 or other provisions of federal law if determined to be appropriate.