EDWIN E. McCAUSLEN AND FRANCES E. McCAUSLEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5696–64. Filed March 25, 1966.

*Robert J. Bird*, for the petitioners.
*Rodney G. Haworth*, for the respondent.

#### OPINION

MULRONEY, *Judge:* Respondent determined a deficiency in petitioners' income tax for 1959 in the amount of $20,738.86. The only issue is whether the gain realized by petitioners from a sale of certain partnership properties acquired by them under a buy-sell agreement is taxable as a long-term or short-term capital gain, which turns upon

whether petitioners are entitled to use the partnership's holding period with respect to such properties.

All of the facts were stipulated and they are so found.

Edwin E. and Frances E. McCauslen, husband and wife, are residents of Steubenville, Ohio. They filed their joint Federal income tax return for 1959 with the district director of internal revenue at Cleveland, Ohio.

In 1946 petitioner Edwin E. McCauslen and his brother, William T. McCauslen, formed a two-man partnership to engage in the nursery, greenhouse, wholesale, and retail flower business. Both men were equal, active partners in the business until William died on March 7, 1959, and after William's death the floral business was continued by the petitioner. The partnership had a fiscal year ending May 31 for tax and accounting purposes.

On October 17, 1956, petitioner and William (together with their wives) executed an agreement which provided, in part, as follows:

WHEREAS, Edwin E. McCauslen and William T. McCauslen are partners operating at Steubenville, Ohio, under the firm name of McCauslen Florists;

WHEREAS, the parties mutually desire to enter into an agreement by which, on the event of the death of one of them, the survivor shall purchase and the decedent's estate shall sell the share of the latter in the partnership at a price determinable by such agreement;

WHEREAS, the parties mutually desire that life insurance be used as a means of providing all or a portion of the funds with which to finance the obligations arising under such sale and purchase agreement;

NOW, THEREFORE, IT IS MUTUALLY AGREED by and between the parties hereto, and on behalf of their eventual heirs and personal representatives, as follows:

1. On the death of a partner, the surviving partner shall purchase and the decedent's estate shall sell the share of the latter in the partnership for a consideration equal to 80% of the book value of each share as shown by the books of the partnership as of the close of the fiscal year next preceding the date of death, after the books have been closed and adjusted by a certified public accountant in accordance with good accounting practice to include all known assets and liabilities of the partnership but before any provision for income tax liability of the individual partners and with no valuation recorded for good will or other intangibles, whether or not same exists.

\*    \*    \*    \*    \*    \*    \*

4. The surviving partner shall be under obligation to save and protect the decedent's estate from all legitimate claims and demands on account of the obligations and debts of the partnership. As a means of assuring the fulfillment of this obligation, the decedent's estate may condition the conveyance of its share in the partnership upon the procurement and submission by the surviving partner of releases or agreements by the partnership creditors effectively exonerating the decedent's estate from such debts or claims. Any such claims or demands may, however, if satisfied by the surviving partners, be used to recompute the book value of the shares and the consideration provided in paragraph No. 2 above, in accordance with the partnership participation existing just prior to the death of a partner.

\*    \*    \*    \*    \*    \*    \*

10. This agreement does not purport to be an agreement of partnership, its purpose being merely to establish a basis and means as between the partners of effecting a sale and purchase of the share of a partner on his death. Any partnership agreement existing between the partners shall continue in effect unchanged as it may relate to the subject matter of this agreement, in which respect it shall be regarded as amended or superseded.

William died on March 7, 1959, and pursuant to the agreement of October 17, 1956, petitioner acquired William's partnership interest. On May 28, 1959, petitioner sold for $200,000 a greenhouse and greenhouse equipment which had previously been owned by the partnership for a period of longer than 6 months.

Petitioner and his wife reported the sale on their 1959 return as follows:

SALE OF GREENHOUSE BUSINESS

| | | |
|---|---:|---:|
| Sold to Dieckmann Bros., May 28, 1959 | | $200,000.00 |
| Less commission to broker | | 8,000.00 |
| Net sale price | | 192,000.00 |
| Less cost of assets sold: | | |
| Land | $35,172.75 | |
| Greenhouse and equipment _____ $185,388.32 | | |
| Less depreciation to date _____ 155,316.16 | 30,072.16 | 65,244.91 |
| Long-term capital gain | | 126,755.09 |

Respondent in his statutory notice of deficiency increased petitioners' taxable income for 1959 and explained the adjustment as follows:

During the taxable year ended December 31, 1959 you sold a greenhouse and equipment for $200,000.00. You reported the gain realized of $126,755.09 as a long-term capital gain on Schedule D of your income tax return. Since one-half of your interest in these assets was acquired by you within 6 months before their sale, it is held that under Section 1222 of the Internal Revenue Code, the gain on this portion is a short-term capital gain. * * *

Section 741 of the Internal Revenue Code of 1954 [1] recognizes a partnership interest as a capital asset which may be sold or exchanged with capital gain or loss treatment. When petitioner purchased the decedent's interest in the partnership from the estate pursuant to the October 17, 1956, agreement, the partnership was terminated. Sec. 708(b).[2] At that point petitioner owned all of the partnership assets,

---

[1] All section references will be to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

[2] SEC. 708. CONTINUATION OF PARTNERSHIP.

    (a) GENERAL RULE.—For purposes of this subchapter, an existing partnership shall be considered as continuing if it is not terminated.

    (b) TERMINATION.—

        (1) GENERAL RULE.—For purposes of subsection (a), a partnership shall be considered as terminated only if—

            (A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or

            (B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits.

i.e., the assets attributable to his own one-half partnership interest since 1946 in the two-man partnership, as well as the assets attributable to the decedent's partnership interest acquired by petitioner in 1959.

There does not now appear to be any dispute between the parties as to the proper bases to be applied to the partnership assets in petitioner's hands after the termination of the partnership. Moreover, as to the proper holding period of these assets, respondent recognizes that petitioner acquired by distribution that portion of the partnership assets relating to his own partnership interest and that with respect to such assets the petitioner is entitled to include the partnership's holding period. Therefore, when petitioner in May 1959 (less than 6 months after decedent's death) sold some of the former partnership assets which had previously been held by the partnership for more than 6 months, the partnership's holding period could be tacked on to petitioner's holding period for that portion of the assets attributable to his own partnership interest, entitling him to long-term capital gains treatment of a portion of the gain realized.[3]

Petitioner argues that he is also entitled to tack on the holding period of the partnership to the portion of the partnership assets he acquired when he purchased the partnership interest of the decedent partner from the estate. Petitioner relies upon section 735,[4] the pertinent portions of which we have set forth in a footnote, and which in section 735(b) provides that in determining the period for which a partner has held property received in a distribution from a partnership (excluding certain inventory items), there shall be included the holding period of the partnership with respect to such property.

We believe that petitioner's reliance upon section 735(b) is misplaced. Sections 731 through 735 represent an attempt to deal comprehensively with the whole problem of partnership distributions of property. Generally, the statutory sections allow tax-free distributions of property by a partnership, with provisions for a carryover basis or a substituted basis, depending upon the type of distribution, and for adjustments to the basis of a distributee partner's interest in the partnership. Section 735 merely follows the distributed partnership property into the hands of the partner and describes the character of the gain or loss when the partner disposes of such distributed prop-

---

[3] Respondent, in his statutory notice of deficiency, allowed $60,633.38 of petitioner's reported gain of $126,755.09 from the May 28, 1959, sale as long-term capital gain, treating the balance of the reported gain as short-term capital gain.

[4] SEC. 735. CHARACTER OF GAIN OR LOSS ON DISPOSITION OF DISTRIBUTED PROPERTY.

   (a) SALE OR EXCHANGE OF CERTAIN DISTRIBUTED PROPERTY.—

     (1) UNREALIZED RECEIVABLES.—* * *

     (2) INVENTORY ITEMS.—* * *

   (b) HOLDING PERIOD FOR DISTRIBUTED PROPERTY.—In determining the period for which a partner has held property received in a distribution from a partnership * * *, there shall be included the holding period of the partnership, as determined under section 1223, with respect to such property.

erty, and in section 735(b) provides that the holding period of the partnership for the distributed property may be tacked on to the holding period in the hands of the partner. The emphasis throughout these sections is upon distributions to a partner in connection with an existing partnership interest.

Much of the complexity of the partnership provisions in the 1954 Code arises because they are based upon conflicting concepts of the nature of a partnership, i.e., the entity approach and the aggregate approach, as well as from Congress' desire to introduce a certain amount of flexibility in this area of partnership taxation. See *David A. Foxman*, 41 T.C. 535, affd. 352 F. 2d 466. Thus, as we indicated in the *Foxman* case, drastic tax differences can result depending upon the categorization of a transaction (for example, as a "sale" of a partnership interest rather than a "liquidation" of such interest), even though the ultimate economic effect is much the same. Therefore, it would seem that concepts which might be meaningful under one section might prove misleading under another section.

The provision for tacking on the partnership's holding period is entirely consistent with the general statutory scheme of postponing recognition of gain or loss until the distributee partner finally disposes of the distributed partnership property. But where, as here, a partner acquires another partner's share by purchase and, as a consequence of the termination of the partnership resulting from such purchase, acquires the partnership assets relating to such purchased interest, the statute has no application. The statute cannot be construed as permitting the purchaser to tack on the partnership's holding period of such assets. In effect, petitioner is contending that he purchased assets belonging to another with a built-in holding period. Neither logic nor necessity supports such an argument and we do not believe that section 735(b) calls for such a result.

Since petitioner's purchase of the decedent's partnership interest resulted in a termination of the partnership under section 708(b), it is our view that petitioner acquired the partnership assets relating to such interest by purchase, rather than by any distribution from the partnership, and that petitioner's holding period for such assets begins from the date of such purchase. See 6 Mertens Law of Federal Income Taxation, sec. 35.60. Consequently, we agree with respondent's determination that petitioner's holding period for the assets attributable to the purchased interest was less than 6 months at the time of their sale by petitioner on May 28, 1959, with the result that the portion of the gain attributable to such assets is taxable as short-term capital gain.

Reviewed by the Court.

*Decision will be entered under Rule 50.*