T.C. Memo. 2009-192

UNITED STATES TAX COURT

LKF X INVESTMENTS, LLC, LKF X CAPITAL CORPORATION, TAX MATTERS
PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6492-06.                    Filed August 25, 2009.

Edward M. Robbins, Jr., and Sharyn M. Fisk, for petitioner.

David W. Sorensen, for respondent.

MEMORANDUM OPINION

MARVEL, Judge:  Respondent issued a notice of final
partnership administrative adjustment (FPAA) for 2001, pursuant
to section 6223(a),[1] to LKF X Capital Corp. (LKF CC or

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code), and all Rule references are to
                                        (continued...)

petitioner), the tax matters partner of LKF X Investments, L.L.C. (LKF), a limited liability company classified as a partnership for Federal income tax purposes.[2]  LKF CC timely filed a petition contesting respondent's determinations.

This matter is before the Court on the parties' motions for summary judgment under Rule 121.  The issues for decision are: (1) Whether the Court has jurisdiction in this partnership-level proceeding to decide whether LKF should be disregarded for Federal income tax purposes and whether the partners' outside bases are zero; (2) whether the Court has jurisdiction to decide whether the accuracy-related penalties apply; and (3) if the Court has jurisdiction regarding the accuracy-related penalties, whether LKF is liable for the substantial valuation misstatement prong of the accuracy-related penalty.

For the reasons discussed below, we shall deny petitioner's motion for summary judgment and grant respondent's motion for summary judgment.

_____

[1](...continued)
the Tax Court Rules of Practice and Procedure.

[2]Respondent determined in the FPAA that LKF was a sham, lacked economic substance, and should be disregarded for Federal income tax purposes.  Our references to LKF as a partnership and to its members as partners are for convenience only.

LKF is not a small partnership within the meaning of the small partnership exception, see sec. 6231(a)(1)(B)(i), and therefore is subject to the unified partnership audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648.

## Background

The parties stipulated the relevant facts for purposes of our ruling on the motions. We incorporate their stipulations herein by this reference. No facts material to the disposition of the cross-motions remain in dispute.

I. The Market-Linked Deposit Transactions

A. Preliminary Steps

On or before September 26, 2001, Laurence K. Fishman (Mr. Fishman) engaged the law firm of Cantley and Sedacca, L.L.P. (Cantley), to prepare and file all documents necessary for the formation of LKF and LKF CC. Between September 26 and October 17, 2001, Cantley prepared and sent Mr. Fishman documents to enable Mr. Fishman to participate in market-linked deposit transactions (MLD transactions) Cantley promoted.[3]

On September 26, 2001, LKF was formed as a limited liability company under the laws of Delaware. On the same day Mr. Fishman executed an operating agreement of LKF X Investments, L.L.C. (operating agreement), acknowledging that Mr. Fishman contributed $130,000 in exchange for 100,000 class A units of LKF. Upon LKF's formation, Mr. Fishman was its only member.[4] The operating

[3]Cantley instructed Mr. Fishman to sign the documents but not date them. Mr. Fishman signed the documents as instructed and returned them to Cantley in September 2001.

[4]On Sept. 26, 2001, LKF filed a Form SS-4, Application for Employer Identification Number, identifying LKF as a multiple-
(continued...)

agreement identified Venice, California, as LKF's principal office and place of business.

On September 26, 2001, LKF CC was incorporated under the laws of Delaware; the certificate of incorporation identified Edward Sedacca as the incorporator. On September 27, 2001, in his capacity as the sole shareholder of LKF CC,[5] Mr. Fishman elected himself as the sole director of LKF CC. On the same day, as the sole member of the board of directors, Mr. Fishman elected himself president and secretary-treasurer and adopted the bylaws of LKF CC.

On September 26, 2001, LKF opened a broker account at Deutsche Banc Alex. Brown, L.L.C. At some point before October 1, 2001, $130,000 was deposited into LKF's account.

---

[4](...continued)
member limited liability company and Mr. Fishman as its manager. The Form SS-4 showed that Los Angeles County, California, was LKF's principal business location.

[5]The record indicates that as of Sept. 27, 2001, Mr. Fishman had not transferred any property to LKF CC in exchange for its stock. The record is not clear whether any LKF CC shares nevertheless had been issued to Mr. Fishman at that point that would have allowed Mr. Fishman to properly elect LKF CC's directors on Sept. 27, 2001. See Del. Code Ann. tit. 8, sec. 107 (2001) (providing generally the incorporator elects the first directors and adopts the original bylaws). However, the validity of Mr. Fishman's vote as a shareholder on Sept. 27, 2001, does not affect our resolution of the parties' motions.

B.    The Terms of the MLD Transactions

On October 17, 2001, LKF and Deutsche Bank AG New York (Deutsche Bank)[6] entered into two offsetting MLD transactions. The terms of the MLD transactions required LKF and Deutsche Bank to deposit the same amount, €21,978,022, with each other.  Both deposits had a maturity date of December 18, 2001, and fixed interest at an annual rate of 3.6 percent, payable at maturity along with the principal.

The terms of the MLD transactions also provided for bonus coupons payable on December 18, 2001, but only if at 10 a.m. New York time on December 14, 2001 (bonus coupon fixing date), the Japanese yen to U.S. dollar exchange rate was greater than or equal to a certain exchange rate (strike price).[7]  With respect to the deposit by LKF, Deutsche Bank was to pay LKF a €3,516,484 bonus coupon if the strike price was greater than or equal to 125.15 Japanese yen to a U.S. dollar (long option).  With respect to the deposit by Deutsche Bank, LKF was to pay Deutsche Bank a

---

[6]The parties stipulated that Deutsche Bank was the counterparty to the transactions.  Although Deutsche Bank sent the confirmations of the transactions, the confirmations also indicate that Deutsche Bank London was the counterparty.  In any case, for purposes of the parties' motions it is irrelevant which Deutsche Bank entity entered into the transactions.

[7]For both MLD transactions Deutsche Bank was the calculation agent that would determine and notify the parties of the exchange rate on the bonus coupon fixing date.

€3,477,802 bonus coupon if the strike price was greater than or equal to 125.17 Japanese yen to a U.S. dollar (short option).

Under the terms of the MLD transactions, LKF was to pay Deutsche Bank a premium of €2,197,802, or $2 million at a spot rate of 0.91, and Deutsche Bank was to pay LKF a premium of €2,173,626, or $1,978,000 at a spot rate of 0.91. The terms of the long and short options provisions of the MLD transactions are summarized below:

| Option | Premium | Strike price per U.S. dollar | Bonus coupon |
|--------|---------|------------------------------|--------------|
| Long | €2,197,802 | ¥125.15 | €3,516,484 |
| Short | 2,173,626 | 125.17 | 3,477,802 |
| Net | [1]24,176 | | 38,682 |

[1]The U.S. dollar equivalent of the net premium was $22,000 at the exchange rate of 0.91 U.S. dollar per euro.

The parties agreed to pay the premiums on October 19, 2001,[8] but neither LKF nor Deutsche Bank transferred the deposit amounts or the premiums to the other party. On October 25, 2001, LKF wired a $22,000 net premium to Deutsche Bank.

Under the bonus coupon provisions of the MLD transactions, three scenarios were possible. If on the bonus coupon fixing date the exchange rate was below 125.15 Japanese yen to a U.S. dollar, neither LKF nor Deutsche Bank would be entitled to a premium interest payment. If the exchange rate was 125.15 or

---

[8]The parties incorrectly stipulated that the premium for the long option was payable on Oct. 16, 2001, instead of Oct. 19, 2001.

125.16 Japanese yen to a U.S. dollar, LKF would be entitled to a €3,516,484[9] bonus coupon and would have no obligation to pay a bonus coupon to Deutsche Bank.  If the exchange rate was at or above 125.17 Japanese yen to a U.S. dollar, both LKF and Deutsche Bank would be entitled to receive and would be required to pay bonus coupons, meaning that LKF would be entitled to a net bonus coupon of €38,682.[10]

   C.    Events After October 17, 2001

On October 18, 2001, Mr. Fishman entered into an agreement with CF Advisors XVI, L.L.C. (CF Advisors),[11] according to which CF Advisors was to advise Mr. Fishman on investment strategies using long and short foreign currency and foreign currency derivatives.  On October 19, 2001, Mr. Fishman, in his capacities as the sole member of LKF and the president of LKF CC, executed an assignment of membership units and joinder agreement (assignment agreement) transferring his entire interest in LKF to LKF CC.  Mr. Fishman treated the transaction as a nontaxable exchange under section 351 in which Mr. Fishman contributed to

---

[9]The parties' stipulation of fact 24 incorrectly shows this amount as €3,156,484.

[10]The potential net bonus coupon is calculated as the difference between the bonus coupons payable, or €3,516,484 minus €3,477,802.

[11]The parties incorrectly stipulated the name of the CF Advisors entity; we disregard the stipulation on this point as being inconsistent with the record.

LKF CC property with a $2,130,000 basis in exchange for LKF CC shares.[12]

On October 29, 2001, CF Advisors became a member of LKF when LKF CC and CF Advisors executed an amended and restated operating agreement of LKF X Investments, L.L.C. (amended agreement). In the amended agreement LKF CC and CF Advisors acknowledged that LKF CC contributed $130,000[13] in exchange for 99,000 class A units and CF Advisors contributed $2,000 out of service fees described below in exchange for 1,000 class B units. The members agreed that LKF would be classified as a partnership for Federal income tax purposes. See sec. 301.7701-3(a) and (b)(1), Proced. & Admin. Regs. On the Form 1065, U.S. Return of Partnership Income, the parties reported the transaction as a

---

[12]Although the parties stipulated that Mr. Fishman received 1,000 LKF CC shares in exchange for interest in LKF, a document entitled "IRC Section 1.351-3(a) Statement for Shareholder 2001 Tax Year", attached to Mr. Fishman's 2001 Form 1040, U.S. Individual Income Tax Return, indicates that Mr. Fishman received 100,000 voting common shares of LKF CC. LKF CC's certificate of incorporation indicates, however, that only 10,000 common shares were authorized when LKF CC was incorporated. The discrepancies in the record as to the number of LKF CC shares that Mr. Fishman received in a sec. 351 transaction do not affect our disposition of the motions.

[13]The long option and $130,000 were assets LKF held when it was a single-member limited liability company, and therefore technically LKF CC contributed both cash and the long option to the newly created partnership with CF Advisors, as stipulation 79 states (and as reported on LKF's Form 1065, U.S. Return of Partnership Income). However, for reasons that are not explained in the record, the amended agreement does not mention the long option as a capital contribution by LKF CC.

contribution to LKF of $2,130,000 consisting of $130,000 cash and $2 million of MLD transactions, and by CF Advisors of $2,000. LKF CC's capital contribution item of $2 million represented the €2,197,802 premium, converted to U.S. dollars at the spot rate of 0.91, that LKF was to pay Deutsche Bank under the terms of the long option. The parties did not reduce the basis in LKF to reflect the obligations under the short option, taking a position that those obligations were not liabilities for purposes of section 752.

The amended agreement also provided that CF Advisors would provide services as an investment adviser and foreign currency and foreign currency derivatives specialist. The amended agreement provided for quarterly compensation of CF Advisors for such services calculated on the basis of LKF's net asset value and all income and gains. With respect to 2001, however, the parties agreed CF Advisors would receive a one-time $8,000 service fee.[14] On November 8, 2001, LKF wired $6,000 to CF Advisors' account in partial payment of the service fee for 2001.

Between November 9 and 21, 2001, LKF entered into four separate European digital currency option transactions with

---

[14]The stipulation of facts contains conflicting information regarding the amount of the service fee. On the one hand, stipulated Exhibit 21-J states that the fee was $8,000, and we so find. On the other hand, the parties stipulated in par. 39(g) that the fee was $20,000. In any event, the amount of the fee is not determinative.

Deutsche Bank involving euro, Japanese yen, British pounds, and Canadian dollars (digital options) for a premium of $2,000 each. On November 16, 2001, LKF sold the Japanese yen digital option for $2,835. On November 26, 2001, LKF wired an $8,000 payment for the digital options premiums to Deutsche Bank. The three remaining digital options expired, with the euro and Canadian dollar digital options expiring out of the money and the British pound digital option paying $3,478. The aggregate net loss to LKF with respect to the digital options was $1,687. On December 10, 2001, LKF authorized a purchase of Canadian dollars for $1,000 (Canadian currency position) at the spot rate.

On December 18, 2001, the MLD transactions matured. Neither LKF nor Deutsche Bank repaid each other the principal or fixed interest.[15]

D.   LKF's Deemed Liquidation

On December 20, 2001, CF Advisors withdrew as a member of LKF by selling its interest to LKF CC for $2,000; LKF CC became LKF's sole member after the sale. Because LKF had elected to be treated as a partnership for Federal tax purposes, the sale of CF Advisors' interest resulted in a deemed liquidation of LKF for

---

[15]The record does not reflect what exchange rate the calculation agent reported on the bonus coupon fixing date, but the parties stipulated that the New York Federal Reserve Bank reported the exchange rate of 127.38 Japanese yen per U.S. dollar. The record does not reflect that the parties paid each other bonus coupons or that Deutsche Bank paid a net bonus coupon to LKF.

Federal income tax purposes.  See sec. 708(b)(1)(A); <u>McCauslen v.</u>
<u>Commissioner</u>, 45 T.C. 588, 592 (1966); Rev. Rul. 99-6, 1999-1
C.B. 432, 433.  On December 20, 2001, LKF's assets consisted of
$101,015 cash and the Canadian currency position.  Under section
732(b) LKF CC claimed a basis in the Canadian currency position
equal to its basis in LKF, or $2,001,000.

On or about December 24, 2001, LKF sold the Canadian
currency position for $878.07.[16]

## II.   Federal Income Tax Reporting

### A.   Cantley Opinion

In January 2002 Cantley mailed Mr. Fishman a 100-page
opinion letter regarding the MLD transactions.  The opinion
concluded, inter alia, that it was more likely than not that:
(1) The obligations under the short option would not be treated
as liabilities for purposes of section 752; (2) when Mr. Fishman
contributed his interest in LKF to LKF CC, his basis in LKF CC
was equal to the premium due from LKF for the long option feature
of the MLD transaction plus any cash held by LKF; and (3) LKF
CC's purchase of CF Advisors' interest resulted in a deemed
liquidation of LKF for Federal tax purposes under section
708(b)(1)(A), and LKF CC took LKF's remaining assets (other than
cash and marketable securities) with an adjusted basis equal to

---

[16]The parties stipulated that LKF sold the Canadian currency
position.

LKF CC's adjusted basis in LKF immediately before the deemed distribution (reduced by any cash and marketable securities deemed received), see sec. 732(b).

B.    LKF's Form 1065

LKF timely filed its Form 1065.  On Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., LKF reported capital contributions by LKF CC of $2,130,000, consisting of $130,000 cash and $2 million of MLD transactions, and contributions by CF Advisors of $2,000.  LKF CC's contribution of $2 million represented a €2,197,802 premium, converted to U.S. dollars at the spot rate of 0.91, that LKF was required to pay Deutsche Bank under the terms of the long option.  LKF CC and LKF did not treat the obligations under the short option as liabilities under section 752(b) and did not reduce LKF CC's basis in the partnership interest by the short option premium.

On the Form 1065 LKF reported the following separately stated partnership items:

| Item | Amount |
|---|---|
| Interest income | $1,316,000 |
| Interest expense | (1,302,800) |
| Dividend income | 405 |
| Net loss on digital options | (1,687) |
| Guaranteed payments to CF Advisors | (8,000) |
| Wire fees | (30) |
| Nondeductible expenses | (15) |
| Total | 3,873 |

All separately stated partnership items were allocated to LKF CC.

LKF also reported distributions to its partners of $132,873 cash and the Canadian currency position to LKF CC and $2,000 to CF Advisors.[17] Under section 732(b) LKF CC allocated its remaining basis in LKF partnership interest to the Canadian currency position as the only partnership asset other than cash. Accordingly, LKF assigned the Canadian currency position an adjusted basis of $2,001,000.

C.   Mr. Fishman's 2001 Return

On his 2001 Form 1040 Mr. Fishman included LKF CC as an S corporation.  Mr. Fishman reported a nonpassive loss from LKF's Schedule K-1 of $2,001,809.  The loss represented LKF CC's loss on the sale of the Canadian currency position that LKF CC received in a deemed distribution in the LKF liquidation; the Canadian currency position was sold for $878.07, with the substituted basis of $2,001,000.  Mr. Fishman combined this nonpassive loss from LKF with other income of $2,042,730, primarily related to Mr. Fishman's business, Trident Labs, Inc., and reported total partnership and S corporation income of $23,606.

---

[17]The parties incorrectly stipulated the amount of distribution to CF Advisors, but the exact amount is irrelevant for purposes of deciding the parties' motions.

III. FPAA and the Parties' Stipulations of Settled Issues

Respondent examined LKF's 2001 Form 1065 and on December 28, 2005, mailed an FPAA to LKF CC as tax matters partner.[18]  In the FPAA respondent adjusted partnership items as follows:

| Item | As Reported | As Corrected |
|------|-------------|--------------|
| Portfolio income interest | $1,316,000 | -0- |
| Portfolio income dividends | 405 | -0- |
| Other portfolio income (loss) | (1,687) | -0- |
| Guaranteed payments to partner | 8,000 | $8,000 |
| Deductions related to portfolio income | 8,030 | -0- |
| Interest expense | 1,302,800 | -0- |
| Investment income | 1,314,718 | -0- |
| Investment expenses | 8,030 | -0- |
| Net earnings from self-employment | 8,000 | 8,000 |
| Nondeductible expenses | 15 | -0- |
| Distributions--money | 134,873 | 134,873 |
| Distributions--property other than money | 2,001,000 | -0- |

In Exhibit A, Explanation of Items (explanation of items), attached to the FPAA,[19] respondent provided the following explanations for the adjustments to LKF's Form 1065:  (1) LKF was not a partnership as a matter of fact; (2) even if LKF was a partnership in fact, it was formed solely for tax avoidance purposes, and various transactions had no business purpose, lacked economic substance, constituted an economic sham, and were abusive under section 1.701-2, Income Tax Regs.; and (3) LKF

_____

[18]Although on its Form 1065 LKF checked off that it is not subject to secs. 6221-6233, it also designated a tax matters partner.

[19]The explanation of items is attached hereto as an appendix.

should be disregarded, and all transactions should be treated as entered into by LKF's purported partners.  Respondent also explained that the obligations under the short option provision of the MLD transactions constituted liabilities under section 752, the assumption of which by LKF should reduce the partners' outside bases.

Although the FPAA did not adjust the partners' outside bases to zero, in the explanation of items respondent determined that the partners failed to establish that the partners' bases in the long option were greater than zero and, accordingly, the partners failed to establish that the adjusted bases in their respective partnership interests were greater than zero.  In paragraph 9 of the explanation of items respondent determined that penalties under section 6662 applied.

LKF CC, as LKF's tax matters partner, timely filed a petition contesting respondent's determinations.  On June 25, 2008, the parties filed a stipulation of settled issues (stipulation).  The parties stipulated that all of the disputed partnership items should be adjusted in accordance with the FPAA, (except the partnership item "Distributions--property other than money").[20]  Petitioner also stipulated:

---

[20]For "Distributions--property other than money" the parties stipulated $8,000, instead of $2,001,000 as LKF reported on the Form 1065, or zero, as respondent determined in the FPAA.

2.  If the Court determines that it has jurisdiction in this case, petitioner stipulates that he does not intend to call any witnesses or offer any evidence in this proceeding, or otherwise contest the determinations made in the FPAA other than the determination that the valuation misstatement penalty imposed by I.R.C. § 6662(a), (b)(3), (e), and (h) applies to any underpayment resulting from the adjustments to partnership items.

In the recitals part of the stipulation petitioner contends that the Court lacks jurisdiction over certain issues addressed in the FPAA and that any underpayment attributable to the adjustments in the FPAA would not be subject to the valuation misstatement prong of the accuracy-related penalty under section 6662(a), (b)(3), (e), and (h).  The recitals part of the stipulation also states the following:

Whereas, if the Court determines that it has jurisdiction in this case, petitioner does not intend to contest any of the issues raised in the FPAA other than the issue of whether the valuation misstatement penalty would apply in this case, and whether respondent has the burden of production for any I.R.C. § 6662 penalty under I.R.C. § 7491(c);

Whereas, aside from the Stipulation of Facts to be prepared and submitted, the petitioner does not intend to offer any witnesses or further evidence on the valuation misstatement penalty issue * * *

Respondent asserts that summary judgment is appropriate because petitioner stipulated the adjustments in the FPAA and does not contest the determinations made in the FPAA, other than the determination that the valuation misstatement prong of the accuracy-related penalty under section 6662(a), (b)(3), (e), and (h) applies.  Respondent argues that the gross valuation

misstatement prong of the penalty applies because the determinations in the FPAA, which petitioner conceded, caused the partners' bases in LKF to be reduced to zero which, in turn, resulted in a reduction in the basis of the Canadian currency position LKF CC received in LKF's deemed liquidation.

Petitioner filed a motion for summary judgment asserting that it had stipulated the numerical adjustments in the FPAA and that the Court lacks jurisdiction over nonnumerical determinations in the explanation of items because such determinations purport to eliminate LKF's partners' outside bases in LKF. Petitioner argues the Court lacks jurisdiction over outside basis adjustments. Petitioner also argues that respondent's determinations of sham, economic substance, and tax avoidance are not partnership items and cannot be litigated in a partnership-level proceeding.

This case is ripe for summary judgment because the parties do not dispute the facts and we may render a decision as a matter of law.

## Discussion

I. Summary Judgment

Summary judgment is designed to expedite litigation and avoid unnecessary, time-consuming, and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the

legal issues presented "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be drawn in a manner most favorable to the party opposing summary judgment.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).  The nonmoving party, however, cannot rest upon the allegations or denials in his pleadings but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d); Dahlstrom v. Commissioner, supra at 820-821.

II.  Respondent's Determinations Regarding Nonpenalty Issues

A.    General TEFRA Procedures

For Federal income tax purposes partnerships are not taxable entities, but they are required to file annual information returns reporting items of gross income and deductions and other information as the Secretary may prescribe.  Secs. 701, 6031. Each partner then is required to report all partnership items on his Federal income tax return consistently with the Schedule K-1 received from the partnership.  Secs. 701, 702, 703, and 704.

Congress enacted the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, to provide consistent treatment of partnership items among partners of the same partnership and to lessen the administrative and judicial burdens that arose from duplicative audits and litigation. See Randell v. United States, 64 F.3d 101, 103 (2d Cir. 1995); H. Conf. Rept. 97-760, at 599-600 (1982), 1982-2 C.B. 600, 662-663.

A partnership item is any item the Secretary has determined is more appropriately determined at the partnership level than at the partner level. Sec. 6231(a)(3); sec. 301.6231(a)(3)-1(a), Proced. & Admin. Regs. The term "partnership item" includes not only items of income, gain, loss, deduction, or credit of the partnership, see sec. 301.6231(a)(3)-1(a)(1), Proced. & Admin. Regs., but also legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc., see sec. 301.6231(a)(3)-1(b), Proced. & Admin. Regs. A nonpartnership item is an item that is not a partnership item; its tax treatment is determined at the partner level. Sec. 6231(a)(4). The proper tax treatment of any partnership item must be determined in a single partnership-level proceeding, sec. 6221, and the result of such proceeding then applies to each individual partner's tax return, Roberts v. Commissioner, 94 T.C. 853, 859-860 (1990).

After a final partnership-level adjustment has been made to a partnership item in a unified partnership proceeding, the Commissioner may assess a corresponding computational adjustment to a partner's tax liability without issuing a notice of deficiency. Secs. 6225(a), 6230(a)(1); N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744 (1987); sec. 301.6231(a)(6)-1(a), Proced. & Admin. Regs.; sec. 301.6231(a)(6)-1T(a), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3840 (Jan. 26, 1999). However, if an increased liability stemming from an affected item requires a factual determination at the partner level, normal deficiency procedures under sections 6212 and 6213 apply to such adjustment to a partner's tax liability (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items). See sec. 6230(a)(2)(A)(i); Domulewicz v. Commissioner, 129 T.C. 11, 19 (2007). The Commissioner must issue an affected items notice of deficiency to the partner in order to assess tax attributable to the affected item. See sec. 6230(a)(2)(A)(i); sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs.; sec. 301.6231(a)(6)-1T(a)(2), Temporary Proced. & Admin. Regs., supra.

B.    Whether LKF Should Be Disregarded for Tax Purposes

Petitioner contends the term "partnership item" includes only accounting items and does not refer to judicial doctrines of sham or lack of economic substance. Petitioner argues that we

lack jurisdiction in this partnership-level proceeding to consider such issues as well as the question of outside basis, which is an affected item.[21]

This Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent provided by Congress. See sec. 7442; GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 521 (2000). In a partnership-level proceeding our jurisdiction is limited to determining partnership items of the partnership for the taxable year to which the FPAA relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount with respect to an adjustment to a partnership item. Sec. 6226(f).

The determinations in the explanation of items in this case are similar to those contained in exhibit A to the FPAA in

---

[21]Petitioner also points out that in the stipulation of settled issues respondent allowed three partnership items (guaranteed payments, net earnings from self-employment, and distributions of money). Although petitioner argues that those allowances are inconsistent with allegations of sham and disregarding partnership, we do not believe that the settlement of adjustments between parties operates to prevent the parties or this Court from addressing and resolving other issues that have not been settled and are properly before the Court.

Petaluma FX Partners, LLC v. Commissioner, 131 T.C. ___ (2008),[22] in which we addressed arguments similar to petitioner's.  In Petaluma we held that a determination whether a partnership is a sham, lacks economic substance, or otherwise should be disregarded for tax purposes is a partnership item and that we have jurisdiction over such determinations.  Id. at ___ (slip op. at 22); see also RJT Invs. X v. Commissioner, 491 F.3d 732, 737 (8th Cir. 2007).  Although we recognized that in some situations a partner's outside basis in a partnership interest may be an affected item more appropriately determined at the partner level, see Domulewicz v. Commissioner, supra at 20; Ginsburg v. Commissioner, 127 T.C. 75, 82-83 (2006); Dial USA, Inc. v. Commissioner, 95 T.C. 1, 5-6 (1990), we held that when a partnership is disregarded for Federal income tax purposes, the Court has jurisdiction in a partnership-level proceeding to determine that there can be no outside bases in the partnership. Petaluma FX Partners, LLC v. Commissioner, supra at ___ (slip op. at 26).  We see no reason to revisit our holding in Petaluma, and we conclude that we have jurisdiction over the determinations at issue.

---

[22]Petaluma FX Partners, LLC v. Commissioner, 131 T.C. ___ (2008), is currently on appeal to the Court of Appeals for the D.C. Circuit, which is the venue for appeal in this case also, as discussed infra.  Petitioner's counsel is counsel for the taxpayer in Petaluma, and the parties' briefs are very similar.

Like the partner in <u>Petaluma</u>, petitioner stipulated that it would not contest the determination that the relevant entity (here LKF) should be disregarded, other than on jurisdictional grounds. When a party states that it does not intend to contest an issue, we have found it appropriate to deem the issue conceded. See <u>id.</u> at ___ (slip op. at 9); see also <u>DeCaprio v. Commissioner</u>, T.C. Memo. 1996-367. Accordingly, we hold that LKF should be disregarded for tax purposes, and the partners have no outside bases in a disregarded partnership. See <u>Petaluma FX Partners, LLC v. Commissioner</u>, <u>supra</u> at ___ (slip op. at 26).

III. <u>Penalties</u>

A. <u>The Parties' Stipulation on Penalties</u>

Respondent stated in paragraph 9 of the explanation of items that the adjustments in the FPAA were attributable to a tax shelter, for which LKF had no substantial authority or reasonable cause. Respondent determined that the entire underpayment of tax resulting from those adjustments is attributable to (1) gross or substantial valuation misstatement under section 6662(a), (b)(3), (e), and (h); (2) negligence or disregard of rules or regulations under section 6662(a), (b)(1), and (c); or (3) substantial understatements of income tax under section 6662(a), (b)(2), and (d).

Petitioner stipulated that it is contesting only the applicability of the valuation misstatement prong of the

accuracy-related penalty (valuation misstatement penalty).  We treat this stipulation as conclusive and binding on petitioner and deem issues with respect to the negligence and substantial understatement prongs of the section 6662 accuracy-related penalty conceded.  See Rule 91(e); Petaluma FX Partners, LLC v. Commissioner, supra at ___ (slip. op. at 31); Stamos v. Commissioner, 87 T.C. 1451, 1454-1455 (1986).  Accordingly, we consider only the applicability of the valuation misstatement penalty.[23]

> B.    Jurisdiction Over Valuation Misstatement Penalty
>       Determination

Section 6662(a) imposes a 20-percent accuracy-related penalty on the portion of an underpayment of tax attributable to items set forth in section 6662(b).  Section 6662(b)(3) specifies as one such item a substantial valuation misstatement.  A substantial valuation misstatement occurs if the value or the adjusted basis of any property claimed on any return is 200 percent or more of the correct amount.  Sec. 6662(e)(1)(A).  The penalty is increased to 40 percent if the underpayment of tax results from a gross valuation misstatement, which occurs if the

_____

[23]The Commissioner may not stack or compound parts of the accuracy-related penalty to impose a penalty in excess of 20 percent on any given portion of an underpayment, or 40 percent, if such portion is attributable to a gross valuation misstatement.  Sec. 1.6662-2(c), Income Tax Regs.

value or adjusted basis of any property claimed on a return is 400 percent or more of the correct amount.  Sec. 6662(h)(2)(A).

Section 6221 provides that the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item is determined at the partnership level.  See also sec. 6226(f); sec. 301.6221-1(c), Proced. & Admin. Regs.; sec. 301.6221-1T(c), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999).  If a penalty was imposed at the partnership level during the TEFRA proceeding, the Commissioner may assess that amount without issuing a notice of deficiency.  Sec. 6230(a)(1); sec. 301.6231(a)(6)-1(a), Proced. & Admin. Regs.; sec. 301.6231(a)(6)-1T(a), Temporary Proced. & Admin. Regs., supra.  The determination under the FPAA or under the decision of a court regarding the applicability of any penalty relating to an adjustment to a partnership item is deemed conclusive, sec. 6230(c)(4), but a partner may file a claim for refund and assert any partner-level defenses that may apply or challenge the amount of the computational adjustment, sec. 301.6221-1(c) and (d), Proced. & Admin. Regs.; sec. 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 3838 (Jan. 26, 1999); see also New Millennium Trading, L.L.C. v. Commissioner, 131 T.C. ___ (2008) (upholding the validity of section 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., supra).  Accordingly, in a partnership-level proceeding we may

not consider partner-level defenses to any penalty, addition to tax, or additional amount that relate to an adjustment to a partnership item. Sec. 301.6221-1(c) and (d), Proced. & Admin. Regs.; sec. 301.6221-1T(c) and (d), Temporary Proced. & Admin. Regs., supra; see also New Millennium Trading, L.L.C. v. Commissioner, supra at ___ (slip op. at 19-23).

Petitioner argues that the Court does not have jurisdiction to determine a penalty with respect to an adjustment to an affected item, such as outside basis. We held in Petaluma FX Partners, LLC v. Commissioner, 131 T.C. at ___ (slip op. at 29), that if a partnership is disregarded for tax purposes and the partners' collective basis in the partnership is zero, the Court has jurisdiction to determine the applicability of accuracy-related penalties that result from the determination. As in Petaluma, we hold that LKF should be disregarded for Federal tax purposes and the partners cannot have outside bases in a disregarded entity. Accordingly, we may determine the applicability of the valuation misstatement penalty.

C. Burden of Production

Section 7491(c) places the initial burden of production in any court proceeding on the Commissioner "with respect to the liability of any individual" for any penalty, addition to tax, or additional amounts imposed by the Code. The burden of proof, however, remains on the taxpayer. Higbee v. Commissioner, 116

T.C. 438, 446-447 (2001). Petitioner argues that section 7491(c) applies because respondent asserts penalties against partners and that respondent failed to carry his burden of production under section 7491(c). Respondent contends that he does not have the burden of production because the penalty determination is made at the partnership level and section 7491(c) applies only when the taxpayer is an individual. Respondent asserts that even if section 7491(c) applies, he has met his burden of production. We do not need to resolve the disagreement because even if the burden of production under section 7491 lies with respondent, he satisfied the threshold requirement supporting his determination that the gross valuation misstatement penalty is appropriate.

D. The Valuation Misstatement Penalty

Respondent argues that the partners' collective basis in LKF should be zero instead of the amount claimed. Respondent also contends the valuation misstatement penalty applies because the inflated basis in the Canadian currency position originates in the partnership's misstatement of Mr. Fishman's contribution amount and his resulting basis in the partnership interest.

Petitioner argues the valuation misstatement penalty is inappropriate because the record does not support a factual determination of sham or lack of economic substance. Petitioner believes that by carving out the right to contest the valuation

misstatement penalty it preserved the right to argue that the transactions had a business purpose. We disagree.

The parties' stipulation clearly states that if the Court finds it has jurisdiction, petitioner does not intend to contest the determinations made in the FPAA other than the valuation misstatement penalty. Stipulations are conclusive and binding on the parties unless otherwise permitted by the Court. Rule 91(e); Stamos v. Commissioner, 87 T.C. at 1454-1455. In Petaluma FX Partners, LLC v. Commissioner, supra at ___ (slip op. at 39), the parties' stipulations were substantially similar to the stipulation in this case. We construed the language to preclude the taxpayer's challenge of the penalty on the merits and did not allow the taxpayer to qualify or change the stipulation. See also DeCaprio v. Commissioner, T.C. Memo. 1996-367. We take a similar approach here and conclude that petitioner waived its right to argue that the underlying transactions had economic substance as a defense to the valuation misstatement penalty.

Petitioner argues the valuation misstatement penalty is inapplicable as a matter of law because the underpayment of tax is not attributable to erroneous valuation but rather to disregard of a partnership. In support petitioner relies on, among other cases, Klamath Strategic Inv. Fund, LLC v. United States, 472 F. Supp. 2d 885 (E.D. Tex. 2007), affd. in part, vacated in part and remanded on a different issue 568 F.3d 537

(5th Cir. 2009),[24] a partnership-level case in which the U.S. District Court for the Eastern District of Texas held that a certain tax shelter lacked economic substance. In Klamath, the Government argued that the gross valuation penalty applied because the taxpayers' basis in euro distributed by a partnership exceeded the true basis and the 400-percent threshold was met. Id. at 899. The taxpayers argued the gross valuation penalty does not apply when the Commissioner totally disallows a deduction or credit, and the case was similar to disallowance of a deduction or credit. Id. at 899-900. The court agreed with the taxpayer and stated that under the law in the Fifth Circuit, if the court disregarded transactions for lack of economic substance the underpayment of tax was not attributable to gross valuation but rather to the disregard of the transaction. Id. (citing Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir. 1990), revg. T.C. Memo. 1988-408)).

Relying on Weiner v. United States, 389 F.3d 152 (5th Cir. 2004), petitioner also contends that because respondent advanced

---

[24]Petitioner cites Klamath Strategic Inv. Fund, LLC v. United States, 440 F. Supp. 2d 608 (E.D. Tex. 2006) (addressing, on the parties' motions for summary judgment, whether certain loans were contingent obligations under sec. 752 and whether sec. 1.752-6, Income Tax Regs., was valid). We assume that petitioner intended to rely on Klamath Strategic Inv. Fund, LLC v. United States, 472 F. Supp. 2d 885 (E.D. Tex. 2007) (considering the transactions on merits and refusing to apply the gross valuation penalty), affd. in part, vacated in part and remanded 568 F.3d 537 (5th Cir. 2009).

several alternative theories for adjusting partnership items, it is impossible to determine whether the partners' underpayments are attributable to a valuation overstatement. Petitioner also suggests that under Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), affg. T.C. Memo. 1988-416, and Todd v. Commissioner, 862 F.2d 540 (5th Cir. 1988), affg. 89 T.C. 912 (1987), the valuation misstatement penalty does not apply when the deduction or credit is disallowed in total for reasons other than the fact that the basis of the property was inflated. See also Keller v. Commissioner, 556 F.3d 1056, 1061 (9th Cir. 2009) (stating that the Court of Appeals for the Ninth Circuit adheres to Gainer v. Commissioner, supra, and does not uphold a penalty for overvaluing an asset when a deduction is disallowed in total), affg. in part and revg. in part T.C. Memo. 2006-131. We disagree that Gainer controls our decision because in Gainer we disallowed a tax credit where the asset had not been placed in service and the case is distinguishable. See Gainer v. Commissioner, T.C. Memo. 1988-416.

In Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we held that we follow a decision of the Court of Appeals to which an appeal from our disposition of a case lies when that decision is squarely on point and a failure to follow that decision would result in an inevitable reversal, because of the clearly established position of the

Court of Appeals.  See also Lardas v. Commissioner, 99 T.C. 490, 494-495 (1992).  Section 7482(b)(1)(E) provides that in the case of a petition under section 6226, a decision by this Court may be reviewed by the U.S. Court of Appeals for the circuit in which the partnership has its principal place of business.  Appellate venue under section 7482 is determined as of the time the petition is filed with the Court.  Sec. 7482(b)(1).  If no subparagraph of section 7482(b)(1) applies, the decision may be reviewed by the Court of Appeals for the District of Columbia Circuit.  Id.

Respondent argues that when the petition was filed, LKF had no principal place of business.  Petitioner states in its petition that LKF's legal residence was California when it filed the petition.  However, petitioner then stipulated that LKF filed its 2001 Form 1065 as a final return, in December 2001 LKF distributed its assets to the partners, and the partnership was deemed liquidated for Federal income tax purposes.  Accordingly, we conclude that LKF did not have a principal place of business when the petition was filed, and this case may be appealable to the Court of Appeals for the District of Columbia Circuit.  See Petaluma FX Partners, LLC v. Commissioner, 131 T.C. at ___ (slip op. at 33).  The Court of Appeals for the District of Columbia Circuit has yet to consider the issue of whether the valuation misstatement penalty applies to underpayments attributable to

overstated basis in property where the transaction is found to be a sham or lacking economic substance.  Accordingly, we may give effect to our own views.  See <u>Golsen v. Commissioner</u>, <u>supra</u> at 757.

In <u>Petaluma</u> we held that if a partnership is disregarded for tax purposes, the gross valuation misstatement penalty applies. <u>Petaluma FX Partners, LLC v. Commissioner</u>, <u>supra</u> at ___ (slip op. at 34).  In so holding, this Court has followed the approach adopted by the Courts of Appeals for the Second, Third, Fourth, Sixth, and Eighth Circuits.  <u>Merino v. Commissioner</u>, 196 F.3d 147, 158-159 (3d Cir. 1999), affg. T.C. Memo. 1997-385; <u>Zfass v. Commissioner</u>, 118 F.3d 184, 190-191 (4th Cir. 1997), affg. T.C. Memo. 1996-167; <u>Illes v. Commissioner</u>, 982 F.2d 163, 167 (6th Cir. 1992), affg. T.C. Memo. 1991-449; <u>Gilman v. Commissioner</u>, 933 F.2d 143, 151 (2d Cir. 1991), affg. T.C. Memo. 1989-684, supplemented by T.C. Memo. 1990-205; <u>Massengill v. Commissioner</u>, 876 F.2d 616, 619-620 (8th Cir. 1989), affg. T.C. Memo. 1988-427. We agree with these Courts of Appeals and see no reason to revisit our holding in <u>Petaluma FX Partners, LLC v. Commissioner</u>, <u>supra</u>.  Accordingly, we conclude that the gross valuation misstatement penalty applies.

E.   <u>Partnership-Level Defenses</u>

When considering penalties at the partnership level, we may consider defenses of the partnership, such as the reasonable

cause exception.  See sec. 6664(c); <u>New Millennium Trading,</u> <u>L.L.C. v. Commissioner</u>, 131 T.C. at ___ (slip op. at 9); <u>Whitehouse Hotel Ltd. Pship. v. Commissioner</u>, 131 T.C. ___, ___ (2008) (slip op. at 90); <u>Santa Monica Pictures, LLC v.</u> <u>Commissioner</u>, T.C. Memo. 2005-104.  Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the disputed item.  See <u>Neonatology Associates,</u> <u>P.A. v. Commissioner</u>, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002).  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.  The "most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability", taking into account the experience, knowledge, and education of the taxpayer.  <u>Id.</u>

In its petition, petitioner claimed that "assuming some or all of the Commissioner's adjustments are correct, there was reasonable cause for Petitioner's positions and the Petitioner acted in good faith."  In the stipulation of settled issues petitioner stipulated that it did not intend to offer any witnesses or further evidence on the valuation misstatement issue.[25]  In its opposition to respondent's motion for summary

---

[25]Although the parties stipulated the Cantley opinion as a joint exhibit, petitioner is not arguing in its briefs that LKF
                                                    (continued...)

judgment petitioner does not argue that LKF had any partnership-level defenses to the valuation misstatement penalty, does not state which facts would support a finding that reasonable cause existed, and does not claim there is a genuine issue as to a material fact with respect to any partnership-level defenses. Accordingly, we conclude there is no genuine issue as to any material fact regarding potential partnership-level defenses. See Rule 121(b); Jarvis v. Commissioner, 78 T.C. 646, 658-659 (1982).

IV. Conclusion

On the basis of the foregoing, we shall deny petitioner's motion for summary judgment and grant respondent's motion for summary judgment.

We have considered the parties' remaining arguments, and to the extent not discussed above, we conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

An appropriate order and
//decision will be entered.

---

[25](...continued)
relied on an opinion of a professional tax adviser.

APPENDIX
Exhibit A - Explanation of Items

1.  It is determined that neither LKF X Investments, L.L.C. nor its purported partners have established the existence of LKF X Investments, L.L.C. as a partnership as a matter of fact.

2.  Even if LKF X Investments, L.L.C. existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners.  The formation of LKF X Investments, L.L.C., the acquisition of any interest in the purported partnership by the purported partner, the purchase of offsetting positions on market-linked deposits, the transfer of offsetting positions held by LKF X Investments, L.L.C. to LKF Capital X Corp., the purchase of assets by the partnership, and the distribution of those assets to the purported partners in complete liquidation of the partnership interests, and the subsequent sale of those assets to generate a loss, all within a period of less than 4 months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for Federal income tax purposes.  Accordingly, the partnership and the transactions described above shall be disregarded in full and any purported losses resulting from these transactions are not allowable as deductions for Federal income tax purposes.

3.  It is determined that LKF X Investments, L.L.C. was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year 2001, a principal purpose of which was to reduce substantially the present value of its partners' aggregate Federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.  It is consequently determined that:

    a.  LKF X Investments, L.L.C. is disregarded and all transactions engaged in by LKF X Investments, L.L.C. are treated as engaged in directly by its purported partners.  This includes the determination that the assets purportedly acquired

by LKF X Investments, L.L.C., including but not limited to foreign currency options, were acquired directly by the purported partners.

b.     The positions in market-linked deports [sic] purportedly acquired by or assumed by LKF X Investments, L.L.C. are treated as never having been acquired by or assumed by said partnership and any gains or losses purportedly realized by LKF X Investments, L.L.C. on the positions in market-linked deposits are treated as having been realized by its partners.

c.     The purported partners of LKF X Investments, L.L.C. should be treated as not being partners in LKF X Investments, L.L.C.

d.     Acquisitions by LKF X Investments, L.L.C. will be adjusted to reflect clearly the partnership's or purported partners' income.

4.     It is determined that the obligations under the short positions on market-linked deposits sold are liabilities within the meaning of § 752 of the Internal Revenue Code, the assumption of which by LKF X Investments, L.L.C. shall reduce the purported partners' bases in LKF X Investments, L.L.C. in the amount of $2,000,000 for LKF X Capital Corp., but not below the fair market value of the purported partnership interest.

5.     It is determined that neither LKF X Investments, L.L.C. nor its purported partners entered into the positions on market-linked deposits or purchased the foreign currency or stock with a profit motive for purposes of § 165(c)(2) of the Internal Revenue Code.

6.     It is determined that, even if the positions on market-linked deposits are treated as having been contributed to LKF Investments, L.L.C., the amount treated as contributed by the partners under § 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partner(s) from the contemporaneous sales of the offsetting position to the same counter-party. Thus, the basis of the contributed position is reduced, both in the hands of the contributing partners and LKF X Investments, L.L.C.  Consequently, any corresponding claimed increases in the outside basis in LKF X

Investments, L.L.C. resulting from the acquisitions or contributions of the positions on market-linked deposits are disallowed.  Also, any corresponding claimed increases in basis in LKF X Capital Corp. resulting from the contribution by Taxpayer of his interest in LKF X Investments to LKF X Capital Corp. are disallowed.

7.  It is determined that the adjusted bases of the long position(s) on market-linked deposits and other contributions purportedly acquired by the LKF X Investments, L.L.C. and contributed to LKF X Capital Corp. has not been established under § 723 of the Internal Revenue Code.  It is consequently determined that the partners of LKF X Investments, L.L.C. have not established adjusted bases in their respective partnership interests in an amount greater than zero.

8.  It is further determined that, in the case of a sale, exchange, or liquidation of LKF X Investments, L.L.C. partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for purposes of determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest.

9.  Accuracy-Related Penalties:

It is determined that the adjustments of partnership items of LKF X Investments, L.L.C. are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions.  In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations.  There has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply.  It is therefore determined that, at a minimum, the Accuracy-Related

Penalty under § 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of LKF X Investments L.L.C. The penalty shall be imposed on the components of underpayment as follows:

A.    A 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by §§ 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

B.    A 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by §§ 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

C.    A 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by §§ 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D.    A 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by §§ 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy-Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under §§ 7201 or 7206 of the Internal Revenue Code or other provisions of Federal law if determined to be appropriate.